## M. C. DE BLANE v. HUGH LYNCH & CO.

23   25
82  278

Crops grown upon the land of the wife, by the labor of her slaves, are the community property of the husband and wife, and subject to an execution upon a judgment against the husband.

The proposition that crops produced on the land of the wife remain her separate property, is founded and supported upon what is supposed to be the true import of the term "increase of land," used in the Act of 1848, better defining the marital rights of parties, (O. & W. Dig. C. S. Art. 1393.) In an etymological sense, it cannot be doubted, that the word "increase," as applied to land, means that which grows out of it, or is produced by its cultivation; but to adopt this meaning of the word, and to interpret the statute accordingly, would lead to results inequitable and unreasonable, and wholly inconsistent with the recognized principles of law upon which the system of community property is based,—that whatever is acquired by the joint efforts of the husband and wife, shall be their common property.

It is true, in a particular case, satisfactory proof might be made, that the wife contributed nothing to the acquisitions; or, on the other hand, that the property was wholly acquired by her industry; but, from the very nature of the marriage relation, the law cannot permit inquiries into such matters. It conclusively presumes, that whatever is acquired, except by gift, devise, or descent, or by the exchange of one kind of property for another kind, is acquired by their mutual industry.

It cannot be objected, that this rule will subject the *corpus* of the wife's estate to be diminished for her support, while the proceeds or fruits of her property are enjoyed by the husband. She may have so much of the proceeds of her separate property set apart for the support of herself, and the nurture and education of her children, as the courts may deem necessary under the circumstances of any particular case (O. & W. Dig. C. S. Art. 1397).

APPEAL from Liberty. Tried below before the Hon. C. W. Buckley.

This was an action for the trial of the right of property in ten bales of cotton, levied upon on the 30th of April, 1849. The record did not show at what time the claimant and the defendant in the execution were married. The facts are stated in the opinion.

*Abbott*, for the appellant.—The lands and slaves, and also

3

De Blane v. Lynch.

their increase, the separate property of the husband and wife, continue separate property, (Hartley's Digest, p. 735, 737, Art. 2409, 2410, 2421). There can be no doubt but that the land upon which this cotton was made, as well as the slaves by whom it was made, were the separate property of the wife. What is meant by the word increase? The increase of lands must mean the rent reserved, or the crops made upon it, or it means nothing. Increase means profits (*vide* Webster's Dictionary, verb. "increase"). The increase of slaves must mean, the young and also the profits of their labor. To give this word any other construction, would be to take the very means of subsistence from the wife, and also the means of the preservation of her separate property. If the creditors could levy upon the crops each year, the yearly necessity would arise that the wife should sell parts of her separate property to subsist upon and to maintain the balance, until, by this means, the entire property would be dissipated.

*George W. Paschal* and *Jones*, for the appellees.

BELL, J.—On the 27th day of October, 1847, Hugh Lynch & Co. obtained judgment in the District Court for Liberty county, against Volizard De Blane, for the sum of one hundred and twenty-three dollars and eighty cents, debt, and seventeen dollars and fifteen cents, costs.

On this judgment an execution was issued, and levied on ten bales of cotton. The cotton was claimed by the present appellant, as her separate property. The appellant is the wife of Volizard De Blane, the defendant in the execution. There was a trial of the right of property. The proof was, that the ten bales of cotton levied on was the crop, or a portion of the crop, of the year 1848, grown upon land which was the separate property of Madame De Blane, and produced by the labor of slaves which were also the separate property of Madame De Blane.

Under the instructions of the court, the Hon. C. W. Buckley presiding, the jury returned a verdict that the cotton was liable

to the execution.    There was judgment accordingly, and from that judgment Madame De Blane has appealed.

The only question presented is, whether the cotton grown upon the land of the wife, by the labor of the slaves of the wife, remained her separate property, or became the common property of the husband and wife.   If the cotton was common or community property, it was, of course, subject to the execution; if it remained the separate property of the wife, it was not subject to the execution.

We are of opinion, that the cotton was community property, and subject to the execution.

So far as I am informed, the proposition that crops produced on the land of the wife, remain the separate property of the wife, is founded and supported upon what is supposed to be the true import of the term " increase of land," used in the Act of 1848, better defining the marital rights of parties.

It will be observed, that the Act of January 20th, 1840, did not use the expression " increase of land."   That statute provided " that neither the lands nor slaves which the wife may own, or to which she may have any right, title, or claim, at the time of her marriage, nor the lands or slaves to which she may acquire, during the coverture, any right, title, or claim, by gift, devise, or descent, nor the increase of such slaves, in each case, nor the paraphernalia, as defined at common law, which the wife may have at the time of the marriage, or which she may acquire during the coverture, as aforesaid, shall, by virtue of the marriage, become the property of the husband, but shall remain the separate property of the wife."

The statute of 1848 provides, that " all property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands or slaves thus acquired, shall be the separate property of the wife."

In an etymological sense, it cannot be doubted, that the word " increase," as applied to land, or to the soil, means that which grows out of it, or that which is produced by the cultivation of

it. The word is frequently employed in this sense in the English Bible. Instances of it will be found in the twenty-fifth chapter of the Book of Leviticus. It is there said, "and for thy cattle, and for the beast that are in thy land, shall all the increase thereof be meat." Again, it is said, "behold, we shall not sow nor gather in our increase." So, in the sixty-seventh Psalm, the expression occurs, "then shall the earth yield her increase." That the word was properly used as applying to the produce of the soil cannot be doubted, when it is remembered, that the translators of King James' Bible have perhaps never been surpassed in accurate scholarship. But to adopt this meaning of the word "increase," as used in our statute, and to interpret the statute accordingly, would, we think, lead to results wholly inconsistent with the recognized principles of law upon which the system of community property is based. It would also lead to results inequitable and unreasonable. If it be admitted, that the "increase of land" meant by our statute, is the product of the soil itself, then it would follow, that a crop grown on the land of the husband, by the labor of the slaves of the wife, would be the separate property of the husband, because it was the "increase" of his land. The husband has, by the statute, the control and management of the separate property of the wife; and if the husband owned land, as separate property, and the wife owned slaves, as separate property, the husband could always employ the wife's slaves in the cultivation of his own land, and thus add to his separate property by the use of her separate property.

The principle which lies at the foundation of the whole system of community property is, that whatever is acquired by the joint efforts of the husband and wife, shall be their common property. It would be an unnecessary consumption of time, to quote authorities for this proposition.

It is true, that in a particular case, satisfactory proof might be made, that the wife contributed nothing to the acquisitions; or, on the other hand, that the acquisitions of property were owing wholly to the wife's industry. But from the very nature

of the marriage relation, the law cannot permit inquiries into such matters. The law, therefore, conclusively presumes that whatever is acquired, except by gift, devise, or descent, or by the exchange of one kind of property for another kind, is acquired by their mutual industry. If a crop is made by the labor of the wife's slaves on the wife's land, it is community property, because the law presumes that the husband's skill or care contributed to its production; or, that he, in some other way, contributed to the common acquisitions.

It cannot be objected, that this rule will subject the *corpus* of the wife's estate to be diminished for her support, while the husband enjoyed the proceeds or fruits of her property. The law, (Hartley's Dig., Art. 2416,) provides, that the wife may have so much of the proceeds of her separate property set apart for the support of herself, and for the nurture and education of her children, as the courts of the country may deem necessary, under the circumstances of any particular case. On the other hand, as was before said, a literal construction of the words of the statute, "the increase of land," would enable the husband to make acquisitions of separate property, by the use of the separate property of his wife. And in this way his children by another wife might become rich, while her children by another husband might remain comparatively poor. The judgment of the court below is affirmed.

Judgment affirmed.