# ENID CITY RY. CO. v. REYNOLDS.

No. 1698.   Opinion Filed July 18, 1912.

Rehearing Denied August 20, 1912.

(126 Pac. 193.)

1.   APPEAL AND ERROR—Verdict—Conflicting Evidence—Review.
A verdict found on conflicting testimony, where there is evidence reasonably tending to support such verdict, is conclusive on the Supreme Court.

2.   HUSBAND AND WIFE—Married Women—Personal Injuries—Right to Sue.  A married woman, though living with her husband, has a statutory right to her separate earnings, and a natural right to her health, strength, skill, and capacity to earn; and, under section 3655, Comp. Laws 1909, she may maintain an action in her own name for any injuries sustained to either her statutory or natural rights.

3.   HUSBAND AND WIFE—Injuries to Wife—Capacity to Earn—Medical Treatment.  In an action for personal injuries, caused by the negligent act of another, a married woman living with her husband, and suing in her own name, may recover for the loss of capacity to earn, if resulting from such negligence, and for cost of medical treatment, if paid, or to be paid, out of her separate earnings.

4.   TRIAL — Request to Charge — Instructions Given.  Where the special instructions offered by a party to an action are in· substance covered by other instructions in the court's charge, it is not error to refuse them.

5.   TRIAL — Argument of Counsel — Comments on. Evidence — Conclusions.  A judgment will not be reversed because of remarks made by counsel in the closing argument, where such remarks are mere conclusions drawn from the circumstances surrounding the case, and from testimony admitted without objection.

(Syllabus by Harrison, C.)

*Error from District Court, Garfield County;*
*M. C. Garber, Judge.*

Action by Addie Reynolds against the Enid City Railway Company.   Judgment for plaintiff, and defendant brings error. Affirmed.

On July 12, 1909, plaintiff, Addie Reynolds, filed her petition in the district court of Garfield county in substance alleg-

ing that about June 23, 1909, having purchased her ticket for passage on defendant's street railway line, she boarded the car at a point on Broadway street, in the city of Enid, for a point east on said line, and that at the time of boarding said street car she informed the conductor at what point she desired to get off, designating the crossing at Fifth and East Broadway streets; that the car was an open or summer car, with seats running crosswise the entire width of the car, plaintiff taking about the third seat from the rear end of the car, and sitting close to the south end of the seat as the car went east; that just about the time the car crossed Fourth street the conductor was standing on the footboard running lengthwise with the car, and on the outside, with his right hand holding to an upright at the rear of the south end of the seat immediately in front of plaintiff, and running from the floor to the ceiling of the car, and with his left hand reached in and took plaintiff's suit case and set it down on the board on the outside, and motioned and spoke to plaintiff to arise and get off; that, thinking he intended to stop the car and help her off, plaintiff arose and turned her face south, preparatory to getting off in response to the conductor's request; that when she turned she was within reach of the conductor, and he reached his left hand and took hold of her arm to steady her against the motion of the running car, and to assist her in alighting; that when the conductor took hold of her arm it afforded her sufficient support to steady her, but that just as she attempted to step out, as she was stepping out onto the footboard, the conductor let loose of her arm and reached up as though to pull the bell cord; that when he turned loose of her, the car being in rapid motion, and she having no other support, and being just in the act of stepping out onto the footboard, she fell out onto the street; that the street was paved, and the jar from the fall was very severe, spraining her ankles, bruising her in other places, and causing serious internal injuries, from which injuries she languished and suffered for a period of weeks before she was able to get about; that by such fall she sustained serious and permanent internal injuries; that such fall and the injuries resulting therefrom were the result of defendant's negligence in withdrawing the support

which he gave her while the car was running, and in failing to slow the car as it crossed the street on which she desired to get off.    She asked for $5,000 damages.

Defendant demurred to the petition, on the ground that it failed to state a cause of action.    The demurrer being overruled, defendant answered by a general denial, and for further answer alleged that if the plaintiff had received the injuries in the manner alleged in her petition, such injuries were the result of her own negligence, and not of the negligence of defendant.    To this defense plaintiff replied, denying the allegations of new matter.

Upon these issues the cause was tried, resulting in a verdict for $1,000 in favor of plaintiff.    From the order overruling motion for a new trial, and from the judgment upon the verdict, defendant, plaintiff in error, brings the case here for review.

*Kruse & Hills,* for plaintiff in error.

*Parker & Simons,* for defendant in error.

Opinion by HARRISON, C. (after stating the facts as above).    The first assignment of error urged is that the verdict was contrary to law and not sustained by the evidence.    The testimony was conflicting on the material facts involved.    The question whether or not the conductor spoke to plaintiff or motioned or beckoned to her to arise and get off, and whether her rising was in response to the conductor's request, and whether he took hold of her arm to support her, and just as she was in the act of stepping out onto the footboard, and without stopping the car, he withdrew such support, the withdrawal of which, while the car was in motion, being, as alleged, the proximate cause of the injuries, were material facts in support of the allegation of negligence.    The plaintiff testified that the conductor, while the car was yet in motion, traveling at about the same rate it had been traveling, motioned to her and spoke to her to arise; that in response to such request she arose, thinking the car would slow down, and that the conductor would help her off; that in turning between the seats with her face toward the south, preparatory to alighting, the conductor took hold of her arm, which gave her

sufficient support to steady her, but which was all the support she had, and that just in the act of stepping out onto the footboard he let loose of her arm and reached his hand up for some purpose—she thought to ring the bell—and that, being left without any support, she fell out onto the street. The conductor denied this statement, and testified in substance that he did not request her to arise, and that she arose apparently of her own accord, stepped out onto the footboard, and fell out onto the street; that he was not within reach of her, but stood to the rear of the seat on which she sat; that he spoke to her and told her to wait till the car stopped.

This testimony was partially corroborated by the witnesses Crawford and Johnson for the defendant. Crawford was sitting on the seat behind her, and Johnson on the seat in front of her. Crawford claimed to have seen her when she fell. Johnson, sitting with his back to her, did not see her until after she had fallen. He testified that the conductor was standing on the rear end of the car at the time.. Crawford testified that the conductor stood at the end of the seat just behind the plaintiff at the time the accident happened, and was holding to an upright just to the rear of her seat. The conductor testified the same.

The jury had all this testimony before them, together with all the testimony on the less material facts. They were properly instructed by the court that they were the exclusive judges of the weight to be given the testimony and of their province in determining the credibility of the witnesses. Upon this testimony, though conflicting, they returned a verdict in favor of plaintiff. In doing so they must necessarily have given greater weight to plaintiff's testimony. This was within their province to do; and, inasmuch as there was sufficient testimony to reasonably support the verdict, it will not be disturbed by this court. The rule is well settled that a verdict, found on conflicting testimony, where there is evidence reasonably tending to support such verdict, is conclusive on the Supreme Court. *Covington v. Fisher,* 22 Okla. 207, 97 Pac. 615; *Chicago, R. I. & P. Ry. Co. v. Mitchell,* 19 Okla. 579, 101 Pac. 850; *Loeb v. Loeb,* 24 Okla. 384, 103 Pac. 570; *Bird v. Webber,* 23 Okla. 583, 101 Pac. 1052; *Chicago, R.*

*I. & P. Ry. Co. v. Broe,* 23 Okla. 396, 100 Pac. 523; *Armstrong, Byrd & Co. v. Crump,* 25 Okla. 452, 106 Pac. 855; *Kaufman v. Boismier et al.,* 25 Okla. 252, 105 Pac. 326.

The second and third assignments may be considered together, as both go to the admissibility of testimony. The second complains of the admission of evidence of plaintiff's earnings, and the third of evidence of her expenses in treating the injury. The evidence showed that she had been earning $9.50 per week, and that her treatment would cost about $150. This brings us to a consideration of the question: What may be recovered by a married woman suing in her own name for personal injuries caused by the negligent act of another?

It is contended by plaintiff in error that a married woman living with her husband cannot recover for loss of earning capacity, nor for expense of medical treatment for her injuries, and in support of such contention cites *Brooks v. Schwerin,* 54 N. Y. 344; *Uransky v. Dry Dock, etc., R. Co.,* 118 N. Y. 304, 23 N. E. 451, 16 Am. St. Rep. 759; *Georgia Railroad & Banking Co. v. Mahala J. Tice,* 124 Ga. 459, 52 S. E. 916, 4 Ann. Cas. 200; *Atchison, T. & S. F. Ry. Co. v. McGinnis,* 46 Kan. 109, 26 Pac. 453; *Union St. R. Co. v. Stone,* 54 Kan. 83, 37 Pac. 1012; *Denver & R. G. R. Co. v. Young,* 30 Colo. 349, 70 Pac. 688.

In *Brooks v. Schwerin, supra,* the contention of plaintiff in error is not supported. In the opinion the court says:

"If the defendant has requested the court to charge that the plaintiff could not recover for the loss of services to her husband in his household in the discharge of her domestic duties, the request could not properly have been refused. But the request was broader, and proceeded upon the idea that all her time and services belonged to her husband, and that she could not recover anything for the value of her time, or for the loss of any services while she was disabled. She was earning in an humble capacity ten shillings a day, and, so far as she was disabled to earn this sum, the loss was hers, and the jury had the right to take it into account in estimating her damages. Suppose she had been a teacher in a school, or a clerk in a store, earning a salary of $1,000 per year, could she not have shown the loss of her salary as one of the facts to be considered by the jury in estimating her damages? She certainly could if she had been a *feme sole,*

and under the present statute she had the same right, being a married woman."

Neither does *Uransky v. D. D., E. B. & B. R. Co., supra,* support the contention. In that case the court held that plaintiff could not recover because of lack of necessary allegations in the petition, and not because she was precluded under the circumstances from recovery.

Neither does *A., T. & S. F. Ry. Co. v. McGinnis, Street Ry. Co. v. Stone,* nor *D. & R. G. Ry. Co. v. Young, supra,* support the contention of plaintiff in error. In each of these cases it is conceded that a married woman, suing in her own name for personal injuries, may recover for injuries which incapacitate her from performing labor or carrying on business on her own separate account. In the case at bar, there were no special findings by the jury, nor separate items of damage found; but upon the theory that plaintiff was entitled to recover in her own name such damages as would fairly compensate her for the injuries sustained, the court instructed the jury as follows:

"In assessing the damages of plaintiff, if any you find her entitled to, you are instructed that in cases of this kind the law does not furnish any exact rule for your guidance; much being left to the good judgment and sound discretion of the jury under the evidence in the case. In estimating the damages, however, you may take into consideration the extent of the plaintiff's injuries, if any were suffered by her, the physical and mental pain and suffering which she has endured, if any there be, which was the natural and proximate result of such injuries, and also the pain and suffering which it is reasonable to infer that she will suffer in the future as the natural and proximate result of such injuries. If you find that the plaintiff is entitled to damages, she should be fairly and justly compensated for the injuries she has sustained. And in making your estimate you may consider, first, such special expense as may be shown by the testimony to have been incurred by the plaintiff by reason of her injuries during the period of her disability; second, fair compensation for the mental and physical suffering caused by the injury; third, the probable effect of the injuries in the future upon her health, and generally any reduction of her power and capacity to perform the services and work to which she was accustomed and pursue the course of life which she might otherwise have done; fourth, such expenses as, in your judgment, she would likely

incur in the future for medical services as you find, from the evidence, are reasonably certain it will be necessary for her to have, if any there be, on account of the injuries received by her as alleged, and allow her such an amount as damages for such injuries as, in your sound and deliberate judgment, she is entitled to under the evidence in this case, not exceeding a total amount of $5,000."

This instruction fairly states the rule of law followed by the weight of authorities. *City of Wyandotte v. Agan*, 37 Kan. 528, 15 Pac. 529; *Jordan v. Middlesex Ry. Co.*, 138 Mass. 425; *Hamilton v. Great Falls Street Ry. Co.*, 17 Mont. 334, 42 Pac. 860, 43 Pac. 713; *Texas & Pac. Ry. Co. v. Humble*, 181 U. S. 57, 21 Sup. Ct. 526, 45 L. Ed. 747; *Colorado Springs & I. Ry. Co. v. Nichols*, 41 Colo. 272, 92 Pac. 691, 20 L. R. A. (N. S.) 215, and notes cited in the latter; *C., O. & G. Ry. Co. v. Burgess*, 21 Okla. 653, 97 Pac. 271.

The foregoing authorities, together with the line of decisions therein cited, clearly support the general proposition that a married woman living with her husband, and suing in her own name in an action for personal injuries, may recover for loss of capacity to earn in her own separate right, for the mental and physical sufferings caused by the injury and the probable effect which such injuries may have upon her future health.

Section 3649, Comp. Laws 1909, provides: "The earnings of the wife are not liable for the debts of the husband." From this statute the question arises: Why are the wife's earnings not subject to the husband's debts? The answer is that her earnings are not his property; they are her property; and if her earnings are her separate property, it certainly follows that the capacity to earn is her separate, natural right, and that she should not be denied the right to recover for loss of same.

Section 3655, Comp. Laws 1909, further provides:

"From and after the passage of this act, woman shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman which her husband does as a man; and for any injury sustained to her reputation, person, property, character or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for

redress and protection that her husband has to appeal in his own name alone."

Now, it being plaintiff's right, both by nature and statute, to enjoy the health and strength and earning capacity with which she had been endowed by nature, and her right under the statutes to control in her own name the fruits of her health and earning capacity, she had the right to do as she pleased with her earnings; and if she chose to use them in paying for medical treatment which had been made necessary by the negligent act of defendant, she had a right to recover for same, notwithstanding the fact that the law imposes on the husband the obligation to pay for the wife's medical treatment. There is nothing in this record showing that the husband was able and willing to pay for same, or whether he had neglected and refused to pay for same; nothing to show whether he was a man of means and of industrious habits, or whether he was profligate and worthless; and if there were, we cannot see where her legal rights would be affected by the question. Her earnings belonged to her, wherever she chose to place them; and whether deposited in a bank, or invested in treatment for her health, they were hers to deal with, to control, and to sue for, and it was not error for the court to admit the testimony of which plaintiff in error complains.

The fourth to eighth assignments, inclusive, are directed to the instructions of the court. Some of the instructions complained of, standing singly and alone, unexplained or modified by others, or by the entire charge taken as a whole, might be slightly misleading; but taken all together and considered as one entire charge, as the court instructed the jury to do, we think the law of the case was fairly and substantially stated.

In the ninth assignment, complaint is made of the refusal of the court to give certain instructions offered by defendant; but, as the law stated in defendant's requested instructions was substantially covered by the court's charge, it was not error to refuse to give them. *McMaster v. Bank,* 23 Okla. 550, 101 Pac. 1103, 138 Am. St. Rep. 831; *Finch v. Brown,* 27 Okla. 217, 111 Pac. 391; *Ellet-Kendall Shoe Co. v. Ross,* 28 Okla. 697, 115 Pac. 892; *Pioneer Telegraph & Telephone Co. v. Davis, Adm'r,* 28 Okla. 783, 116 Pac. 432.

In the tenth assignment, complaint is made that plaintiff's counsel made certain remarks in his closing argument, which remarks were objected to by defendant below at the time. The plaintiff testified that after receiving the injuries complained of she was visited and treated by Dr. McKee and Dr. Fread; that she had not sent for either of them, nor authorized the sending for either of them, and did not know by whom or why they were sent to treat her; that after some days' treatment she continued to suffer worse from internal injuries, complained that the two attending physicians were doing her no good, and discharged them and got another doctor. Dr. Fread was not used as a witness. Dr. McKee was used as a witness, and testified, without objection, that he was the company's physician, and that the company had sent him to treat plaintiff for her injuries. Counsel for plaintiff below, commenting upon this evidence in the closing argument, made some remark, which does not appear fully in the record, about the company recognizing its liability for the injuries by sending its physician to treat the plaintiff. This remark was objected to by the company's counsel, which objection was overruled and the ruling excepted to; whereupon counsel for plaintiff made the following remarks:

"I might add, gentlemen, after this interesting objection in regard to my statement as to the company, that possibly there are three reasons why the company did send this doctor there. There may be three reasons. I said I could not see but two. I can see three reasons now. One was that they might have sent their company doctor to wait on this woman to give us her actions, so that they would be fortified against any prosecution which she might make. That might be one reason. There might be another reason, and that is that they recognized the liability of the company to this woman, and were seeking to do everything in their power to lessen their liability. There might be a third reason, and that is that out of the humanity and goodness of the heart of this company, and because of its feeling for suffering women and injured humanity, they sent their company physician abroad in the world to heal the sick and attend the afflicted and wait upon them. There may have been these three reasons. They may be an eleemosynary institution, and they may be sending their company physician to everybody afflicted; but if it was not for one of these three reasons, what in the creation was the

reason? In my judgment, the reason they did send him there was because they recognized the fact that they were liable to this woman, and that they wanted to lessen that liability just as much as possible."

We are unable to see wherein this argument was materially prejudicial or unlawfully harmful. True, it savors somewhat of sarcasm; but the evidence was undisputed that Dr. McKee was the company's physician, and that the company had sent him to treat plaintiff's injuries. The company had some reason for sending him; it was under no legal obligation to do so; and, inasmuch as the evidence was admitted without objection, we can see no reason why counsel should not be permitted to comment upon same, or to draw conclusions therefrom. We have examined the authorities cited by plaintiff in error, and find that, under the circumstances in this case, the remarks of counsel do not bring it within the rule laid down by the authorities cited. Upon a close examination of the record, we find no substantial error.

The judgment should be affirmed.

By the Court: It is so ordered.