### BOWLES v. WATSON et al.
### (No. 2025.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 1, 1922. Rehearing Denied Nov. 29, 1922.)

**1. Adverse possession ⬉27—Defendants must show facts as to use and occupancy for 10-year statute.**

Defendants relying on the 10-year statute (Rev. St. art. 5675) to defeat recovery of land have the burden of showing affirmatively the facts with reference to their use and occupancy for the entire period.

**2. Adverse possession ⬉19—Showing of inclosure insufficient for 10-year statute.**

The mere showing of inclosure for the entire period is insufficient to establish the bar of the 10-year statute (Rev. St. art. 5675) in action to recover land.

**3. Adverse possession ⬉66(2)—Mistaken belief as to location of fence immaterial.**

The possession of one claiming all the land within his inclosure as part of his section is none the less adverse because he was mistaken in his supposition that one of his fences was on a section line.

**4. Tenancy in common ⬉15(10)—Any presumption as to possession by tenant ordinarily in favor of cotenants.**

There is no presumption that possession by one cotenant is adverse to that of his cotenants, but ordinarily his possession will be presumed to have been taken in the right of the common title.

**5. Tenancy in common ⬉15(10)—That possession was adverse to cotenant may be shown by additional facts.**

That the possession of one cotenant was taken and maintained in hostility to the rights of his cotenants may be shown by additional facts.

**6. Tenancy in common ⬉15(1)—Prescriptive title acquirable against cotenant charged with knowledge of hostile possession.**

If it be sufficiently shown by additional facts that possession of one cotenant was taken and maintained in hostility to the rights of his cotenants, and they be charged with knowledge as to the hostile character of his possession, limitations may be established in his favor against them.

**7. Tenancy in common ⬉15(10) — Adverse possession of tenants in common presumed continued in the same right on one of them and others purchasing the land from another.**

Adverse possession against the owners of section 17, begun by B., owner of section 12, fencing part of section 17 with section 12, and continued when that possession was delivered to P. and M. on their purchasing section 12 of B., will be presumed not to have changed, on P. and others, not including M., purchasing section 17 from another, and to have thereafter been in the right of the title acquired by such purchasers of section 17, but to have continued in the right in which it was begun.

**8. Vendor and purchaser ⬉232(3)—Purchasers held charged with notice at time of purchase, in view of fence.**

Purchasers of section 17 were charged at the time of their purchase with constructive knowledge of the adverse possession of a part of it, such part being inclosed by fence with section 12 owned by persons other than their vendors, including one of such purchasers.

**9. Tenancy in common ⬉15(1)—Extent to which tenants in common could acquire prescriptive title against each other and others stated.**

Where P. and M., owners of section 12, were in adverse possession of the part of section 17 inclosed with section 12, and P. and others, with constructive knowledge of such possession, purchased section 17 of another, P., to the extent of his interest in section 12, could acquire prescriptive title to the interests of his tenants in common in such part of section 17, and M., to the extent of his interest in section 12, could acquire prescriptive title to the interests of P. and his cotenants in such part of section 17.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

10. Tenancy in common ⟨⟩15(1)—No adverse possession by tenant in common in one tract against himself as tenant in common in another tract.

Within the 10-year statute of limitations (Rev. St. art. 5675) as to the right of action against "another," in view of definition of adverse possession by article 5681, as appropriation hostile to claim of "another," etc., there can be no adverse possession by one as tenant in common with one person in certain land against himself as tenant in common with others in other lands.

11. Trial ⟨⟩219—Court should, on request, in an action define "peaceable and adverse possession" when involved.

The court should, on request, in a case involving the 10-year statute of limitations, define the term "peaceable and adverse possession," used therein.

12. Trial ⟨⟩352(5)—Submission of issue held not on weight of evidence.

Submission of issue, "Do you find from the evidence that defendants were in the peaceable and adverse possession * * * for ten years?" held not on the weight of evidence as assuming the possession was adverse, and submitting only its duration.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Trespass to try title by Frank Bowles against J. W. Watson and another. From judgment for plaintiff for less than prayed, he appeals, defendants making cross-assignment. Reversed and remanded.

Bean & Klett, of Lubbock, for appellant.
Bledsoe & Mullican, of Lubbock, for appellees.

BOYCE, J. Appellant, Frank Bowles, brought this suit in trespass to try title against appellees, J. W. and J. E. Watson, to recover a small strip of land alleged to be part of section 17, block A, T. T. Ry. Co., in Lubbock county. The appellees answered by a plea of not guilty and a plea of 10 years' limitations. A judgment for a one-third undivided interest in the land sued for was rendered in plaintiff's favor.

Under the plea of not guilty an issue of boundary as to the line between section 17, owned by appellant, and section 12, on the north, owned by appellees, was tried, and the finding was against the appellees on such issue. But the judgment sustained the plea of 10 years' limitations to a two-thirds interest in the land. The only questions raised on this appeal concern the issue of limitations.

The facts are: That in 1903 section 12 was owned by R. A. Barclay, and was in a large pasture with other lands owned by Barclay and W. D. McMillan. During that year Barclay and McMillan divided their lands, and put them in separate inclosures. At this time they had some surveying done, and corners were put in for the southeast and southwest corners of section 12. A fence was built in accordance with such survey, running along the south line of section 12, as thus established, and inclosing five sections of land, including section 12, which inclosure was thereafter known as the Barclay ranch. A. A. Peoples and Geo. F. Munnerlyn bought these five sections of land from Barclay in April, 1906, Peoples acquiring a one-third interest and Munnerlyn a two-thirds interest by the purchase. Peoples and Munnerlyn sold to appellees, J. E. and J. W. Watson, by deed dated September 14, 1916. In 1908 Peoples and several others, not including Munnerlyn, however, bought section 17, which adjoined section 12 on the south. In 1911 a partition was had between these joint owners of section 17, at which partition W. K. Dickinson, one of such joint owners, acquired title to the north part of section 17, which would include the land in controversy, and which had been inclosed within the Barclay pasture, above referred to. Dickinson sold to Frank Bowles, who brought this suit in November, 1917. The issue of boundary was submitted to the jury, and decided in plaintiff's favor. The court instructed the jury peremptorily to find against the defendants, J. E. and J. W. Watson, on the issue of limitations as to a one-third interest in the land, and submitted this issue as to the other two-thirds interest:

"Do you find from the evidence that the defendants, J. W. Watson et al., were in the peaceable and adverse possession of two-thirds of the land sued for, cultivating, using, and enjoying the same, holding the same under Geo. F. Munnerlyn, and those whose estate he claims, for 10 consecutive years or more previous to the institution of this suit on the 12th day of November, A. D., 1917?"

The jury answered the issue "Yes," and judgment was rendered accordingly. The facts will be stated in such further detail as may be necessary in the discussion of the propositions calling in question the sufficiency of the evidence to support the judgment.

[1, 2] It is contended under the first proposition that the evidence will not sustain the 10 years' statute of limitations because it is not affirmatively shown that adverse possession was continuously maintained for a period of 10 years. The character of Barclay's possession of the land does not appear until about February, 1906. It was shown that at this time he was living on the ranch, using the lands for grazing purposes, and cultivating a farm within the pasture, the exact location of the residence and farm on the five sections not being definitely shown. Barclay delivered possession to Peoples and Munnerlyn in April, 1906. Neither of them ever lived on the lands. It appears that immediately after their purchase they placed a

tenant, Alexander, on the land, and the lands were thereafter used as a farm and ranch for some three or four years, being occupied by the tenant Alexander. It further appears that Joe Herzet was on the land as tenant in 1916, but the character of the occupancy of the land in the interim from the termination of Alexander's tenancy until some time early in 1916 does not appear. The appellees had the burden of showing affirmatively the facts with reference to their use and occupancy of the land during this period. Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265; Phillipson v. Flynn, 83 Tex. 580, 19 S. W. 136; Appel v. Childress, 53 Tex. Civ. App. 607, 116 S. W. 129. The mere showing of inclosure during all this time was not sufficient. Authorities already cited. Any other use or occupancy of the land during such period, except as we have stated, is left to conjecture, and we do not think the evidence was sufficient to discharge the burden on the appellees in respect to the plea of limitations.

It is also contended that the proof is insufficient because it is claimed that any prior adverse possession was broken by the writing of a letter by Peoples to Dickinson in the early part of the year 1916. The fact of the writing of this letter, its contents, and its effect, would have been for the jury. Besides, if the facts had otherwise shown continuity of possession from the time of Barclay's possession in February, 1906, the jury would have been justified in finding that the period was complete before the writing of this letter.

[3] It is also urged by appellant that the evidence does not show that the possession was under a claim of right hostile to the owners of section 17, because, it is asserted, Peoples and Munnerlyn were only claiming section 12, and whatever land might be embraced within its true boundary. The evidence pertinent to this proposition is that Barclay inclosed the lands under the belief that the fence was on the south line of section 12; that when he sold to Peoples and Munnerlyn he pointed out the marks set for section 12, and informed them that he owned all the land within the fence. The lines were also pointed out to the Watsons when they purchased, and claim made that the fence was on the line. The evidence is therefore sufficient to show that the possessors of the Barclay pasture were claiming all the land inclosed; that they were claiming this particular land as being a part of section 12. These facts we think are sufficient to support the plea of limitations, though subsequent developments would show that they were mistaken in the supposition that the fence was on the line between sections 12 and 17. Arnold v. Evans (Tex. Civ. App.) 140 S. W. 497; Bracken v. Jones, 63 Tex. 184.

[4-10] The second and third propositions are to the effect that, as Peoples was, during a part of the time necessary to be computed in completing the period of limitations, a joint owner of both sections 12 and 17, though the other owners of the other interests in said respective sections were different, there could be no running of the statute during the existence of such condition. Stated concretely, the proposition is that Peoples and Munnerlyn, as owners of the Barclay ranch, including section 12, could not hold adversely to Peoples, Dickinson, and others as owners of section 17, at least in the absence of some express notice on Peoples' part to his co-owners of section 17 as to the adverse capacity of his holding of that part of 17 within the Barclay pasture. It is true that there is no presumption that possession by one cotenant is adverse to the owners of the other interest in the land. Ordinarily the possession will be presumed to have been taken in "right of the common title." Alexander v. Kennedy, 19 Tex. 492–493, 70 Am. Dec. 358; Stiles v. Hawkins (Tex. Com. App.) 207 S. W. 95, and authorities cited; Portis v. Hill, 3 Tex. 273; 7 R. C. L. 845. But all these authorities, and others to the same effect, at the same time announce that additional facts may establish that the possession of one cotenant was taken and maintained in hostility to the rights of the other cotenants, and, if this be sufficiently shown, and the other cotenants charged with knowledge as to the hostile character of the possession, limitations will be established. In this case the adverse possession against the owners of section 17 began with the occupancy by Barclay, and continued when that possession was delivered to Peoples and Munnerlyn. When Dickinson and his associates, including Peoples, thereafter acquired section 17, it could not fairly be presumed that Peoples' and Munnerlyn's possession, which had been adverse up to that time, was thereupon changed, and thereafter presumed to be in right of the title acquired by Dickinson and his associates. Rather the possession should be presumed to continue in the right in which it was begun. The purchasers of section 17 were charged at the time they bought with constructive knowledge of the adverse possession of a part of the section by Peoples and Munnerlyn. It follows, we think, that Peoples and Munnerlyn could acquire, by limitations under the facts of this case, the title of Peoples' cotenants of section 17. Munnerlyn, we think, could also acquire, for the benefit of his two-thirds interest, the title of his cotenant, Peoples, to that part of section 17 included within the Barclay pasture. We doubt, however, whether the facts would support limitations in favor of Peoples and those acquiring his title to the lands in the Barclay pasture as against Peoples' interest in section 17. This interest we understand to be an undivided one-seventh. Adverse possession and its definition require a true owner and an adversary in possession. The statute reads:

"Any person who has the right of action for the recovery of any lands * * * against another having peaceable and adverse possession thereof * * * shall institute his suit thereof within 10 years," etc. R. C. S. art. 5675.

" 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." R. C. S. art. 5681.

See, also, 2 C. J., p. 50.

It does not seem that there could be any adverse possession at a time when the true ownership and the possession are in the same person in the same capacity. There was a considerable period of time necessary to be computed to complete the 10-year bar, during which, in any contest as to a $1/21$ interest in that part of section 17 inclosed within the Barclay pasture, Peoples would have been his own adversary. As owner of a one-seventh interest in section 17, he could not have sued himself as a claimant of a one-third interest of that part of the section inclosed and held by him and Munnerlyn. 1 C. J. 983. We are therefore of the opinion that, under the facts of this case, the plea of limitations could not apply to a $1/21$ interest in the land. This general discussion disposes of the appellee's cross-assignment to the action of the court in holding that limitation title could be acquired to only a two-thirds interest in the lands in controversy.

[11] The fourth proposition complains of error in the refusal to give a special instruction defining what appellants contend to be the essential elements of adverse possession. The court should, on request, define the term "peaceable and adverse possession." That term is defined by the statute, and such definition would be more appropriate than the requested charge. In fact, the requested charge as applicable to the facts of this case would have been apt to be misleading.

[12] We do not think the issue submitted and hereinbefore quoted is on the weight of the evidence because it assumes that the possession was adverse, and submits only the question of its duration, as is contended by appellant under the fifth proposition.

Reversed and remanded.