## SPEED v. GILLILAND et al.   (No. 3212.)

Court of Civil Appeals of Texas. Amarillo.
May 22, 1929.

Rehearing Denied June 19, 1929.

M. J. Baird, of Plainview, for appellants.
C. D. Russell and W. W. Kirk, both of Plainview, for appellees.

HALL, C. J.   The appellee, Mary A. Gilliland, joined by her husband, instituted this suit against appellant and the sheriff of Castro county, to enjoin the levy of an execution upon 330 acres of land situated in Castro county, Texas, and the sale thereof to satisfy a judgment which Speed had recovered on September 3, 1925, against J. B. Gilliland, the husband of appellee Mary A. Gilliland, and other parties.

In her original petition she alleged that on and prior to the 17th day of September, 1927, she owned the land in her own name and as her sole and separate property; that the execution had been issued and levied, and the land advertised to be sold November 1, 1927; that such sale would cast a cloud upon her title, resulting in irreparable injury, against which she had no adequate remedy at law—and prayed for a temporary injunction and that upon final hearing the injunction be made permanent.   Temporary injunction was issued, as prayed for, and by agreement the case was transferred from the district court of Castro county to the district court of Hale county.

On September 10, 1928, the defendants Speed and the sheriff, Maples, filed their amended original answer, which contains a general and one special exception, and for special answer they allege that in cause No. 2170 in the district court, wherein Speed was plaintiff and J. B. Gilliland and others were defendants, the plaintiff recovered a judgment against J. B. Gilliland, the husband of Mary A. Gilliland, in the sum of $998.76, with interest at 10 per cent. and costs of suit; that the said judgment is unsatisfied in the principal sum of $1,276.41, and was, at the

time of the filing of this suit for injunction, a valid and subsisting judgment; that said judgment was a debt against the community estate of the Gillilands, and that the execution sought to be enjoined was based upon said judgment; that the land levied upon was purchased by the Gillilands, and paid for by them with community property and funds, although title was taken in the name of Mary A. Gilliland; that the said property was conveyed to Mary A. Gilliland in fraud of Speed's right to have the same applied to the payment of said judgment; that their act in having the land conveyed to her was an attempt upon their part to fraudulently conceal community property, and hinder and delay and defraud the defendant Speed in the collection of his judgment.

In reply to this pleading, the plaintiffs answered by a general denial. The court submitted the controversy to a jury upon the following issue, which the jury answered in the affirmative:

"Do you find from the evidence in this case that the north one-half of survey No. 14 in block S–2, certificate 35/30, situated in Castro county, Texas, is the separate property of the plaintiff Mary A. Gilliland?"

In connection with this issue, the court charged the jury as follows:

"The burden of proof in this case in answering the above issue is upon the defendant Guy B. Speed, to prove by a preponderance of the evidence the negative of said issue."

From a judgment entered in accordance with the verdict, Speed prosecutes this appeal.

■ Appellant's first contention is that the court erred in refusing to direct a verdict in his favor. Several propositions are urged under this assignment, which will be considered together. The appellees insist that appellant has not properly briefed the case, but such an assignment presents fundamental error, and the contentions will be considered.

■■ The evidence shows that the land in question was conveyed by J. H. Slaton and wife to G. W. Lynn and wife on the 21st day of October, 1924, for the recited consideration of $8,500 cash and the assumption· by the grantees of an indebtedness of $3,000 due the Federal Land Bank of Houston. It is further shown that Lynn and wife conveyed the land to Mary A. Gilliland on the 1st day of March, 1926, the consideration recited in the deed being as follows:

"For and in consideration of the sum of $8,000 to us in hand paid by Mary A. Gilliland, out of her separate funds and estate, the receipt of which is hereby acknowledged, and the further consideration that the grantee assume and agree to pay the balance due on an original indebtedness of $3,000 in favor of the Federal Land Bank of Houston, Texas, evidenced and secured by a deed of trust on the land herein conveyed," etc.

Appellee Mrs. Gilliland was called to the witness stand by the appellant, and it appears from her testimony that part of the consideration moving to Slaton and wife for the tract of land in question consisted of lots 3 and 4 in block 43, and lot 4 in block 44, of the town of Plainview. She testified that the Gillilands owned the property in block 43, where the old boarding house used to stand; that they had two lots in that block; that she conveyed lot 3 to Slaton, in part payment for the land in question; that the Gillilands bought and paid for the two lots in block 43 after they were married and while she· was running a boarding house on the property; that they paid for it with community funds; that in March, 1926, when they bought the land from Slaton, she let the title be put into the name of her son-in-law, George Lynn, but not for the purpose of beating the judgment. against Gilliland, and that Lynn now lives on the boarding house property in Plainview; that the cash consideration in the deed from Slaton to Lynn was the value of the Plainview property, which was exchanged for the land, or rather, that Slaton conveyed the land in question in part payment for the three lots in Plainview, and paid Gilliland the balance in money. She testified that, in running the boarding house, she made about $135 a month, and with these earnings she purchased a part of the lots which were conveyed to Slaton, and that during this time Gilliland was at the Ware Hotel, and she was running the boarding house, making her own money. She says she kept no record of the amount of money she earned in that way, but that it was more than $100 a month net.

The evidence of this witness, as reflected by the statement of facts, is not very clear, and it is difficult to ascertain exactly what she means by a number of her statements; but we think it is reasonably clear that they were purchasing the property through the son-in-law, George Lynn. She says they had their business together with Lynn; that she paid $2,000 for the naked lot, and earned the money keeping the boarding house in Plainview; that George Lynn really never did own it, but owned an equity in it, the amount of which she could not state; that she had Lynn to convey the property to Slaton, and that the deed to the property which they purchased from Slaton was in George Lynn's name; later on she had Lynn convey the land to her in satisfaction of her interest in the property that went to pay for ·it, and that he deeded it to her individually; that lot No. 4 in block No. 44 is also part of the property which went to pay for the land in Castro county; that she purchased that property with money earned by her in running the boarding house; that at the time Gilliland took over the Ware Hotel they were running the boarding house on the lots where the fire occurred; that she bought lot 4 in block

44, paying for it with her own earnings; that Gilliland had nothing to do with such purchase. She stated that she did not know that they made any special agreement about the profits from the boarding house belonging to her, nor was there ever anything said specially between them, when she bought lot 4 in block 44, as to who should own it, nor was anything said about who should own it after she had purchased it. At the time she told him she wanted to buy it, she says nothing was said between them as to who should own it afterwards.

After both parties had closed in the introduction of testimony, over the objection of appellant, Gilliland was permitted to testify, with reference to his wife's purchase of lot 4 in block 44, that he told her he did not think it was a very good deal, but as it was over close to where their daughter lived, and she wanted it for that reason, she said she was going to buy it and pay for it; that she took a deed in her own name and he had no interest in it; that she told him the deed was made to her, and he never read it, nor did he object to it being made to her. He further testified that it was his intention that she should own that lot as her separate property.

We think this testimony shows conclusively that all three of the lots owned by the Gillilands, and which were transferred to Slaton, through Lynn, in exchange for the land in question, were purchased with community funds. The personal earnings of both the husband and wife are held to be community property. Kerr v. Tyler Guaranty State Bank (Tex. Civ. App.) 283 S. W. 601; Stephens v. Stephens (Tex. Civ. App.) 292 S. W. 290. When the land in question was conveyed to Mrs. Gilliland by deed reciting that the consideration was paid out of her separate funds and estate, the property did not become prima facie her separate estate, for this fact was rebutted by her testimony, unless it has been made to appear that by agreement with her husband, while he was solvent, the money which she acquired in conducting the boarding house should be held and claimed by her as her separate estate. No such agreement and fact were shown.

■ It is true that, at the time Gilliland conveyed lots 3 and 4 in block 43 to her, the judgment against him by Speed had not been recovered, but the note which is the basis of the judgment may have been in existence. The judgment is based principally upon a note signed by Gilliland, but it does not give the date of the note, and therefore the record does not show that the indebtedness existed on March 31, 1924, when Gilliland conveyed said lots to his wife; also the deed does not make it her separate estate, because as part of the consideration she assumes a debt of $3,000 against it, and does not say this is to be paid out of her separate funds.

Kearse v. Kearse (Tex. Com. App.) 276 S. W. 690. Lot 4 in block 43 was conveyed to Slaton by both the Gillilands and the Lynns on October 18, 1924, prior to the date of the judgment. The record shows that the land in controversy was conveyed by Lynn to Mrs. Gilliland after the judgment was rendered against Gilliland. While Slaton conveyed the land to Lynn on October 21, 1924, the record indicates that this conveyance was understood to be for the benefit of the Gillilands, and that they really owned the greater interest in it. The extent of their interest was not shown.

■■ The appellant attacks the deed to Mrs. Gilliland as being a fraudulent conveyance. R. S. art. 3997, provides that every gift, conveyance, assignment, transfer, or charge made by a debtor, which is not upon consideration deemed valuable in law, shall be void as to prior creditors, unless it appears that such debtor was then possessed of property within this state, subject to execution, sufficient to pay his existing debts. The land in question having been purchased with community funds, it could not be effectively transferred to his wife as a gift, unless at that time Gilliland was solvent. According to Maddox v. Summerlin, 92 Tex. 483, 49 S. W. 1033, 50 S. W. 567, the burden was upon Mrs. Gilliland, if she claimed the property as her separate estate by virtue of a gift from her husband, to show that, at the time she acquired the 330 acres, he had property subject to execution sufficient to satisfy the judgment then against him. Schwethelm v. Schwethelm (Tex. Civ. App.) 1 S.W. (2d) 911; Stolte v. Karren (Tex. Civ. App.) 191 S. W. 600; Attebery v. Stringer (Tex. Civ. App.) 3 S.W.(2d) 935. No such proof was offered.

The Gillilands did not claim the boarding house as their homestead, but appellant seems to admit that it was. The record does not show the date of the fire which destroyed the boarding house, nor when the residence was erected on lot 4 in block 44, nor whether this lot was conveyed to Slaton before or after the judgment was obtained or the note given. Nor is there any evidence showing when the new residence was built on lot 3 in block 43. The deed conveying lot 3 to Slaton was not introduced in evidence, nor are we informed as to the date of that transfer. This being the uncertain and unsatisfactory condition of the pleading and evidence, we are not able to determine, further than has been stated, the right of Mrs. Gilliland to claim the land in question as her separate property. For the reasons stated, the court did not err in refusing to direct a verdict for appellant.

■■ Appellant excepted to the charge of the court because it failed to define the term "separate property," and also requested a special instruction defining separate property of the wife. While the definition in the

special instruction requested may not be technically correct, the action taken by appellant was sufficient to call the court's attention to this omission in the charge. The term "wife's separate property" has a legal meaning, and is defined by R. S. art. 4614, and limited by article 16, section 15, of the Constitution. Brokaw v. Collett (Tex. Com. App.) 1 S.W.(2d) 1090; Burruss v. Murphey (Tex. Civ. App.) 5 S.W.(2d) 612. Under R. S. art. 2189, it was the duty of the court, at least when requested, to define that term, and his failure to do so is reversible error. In view of another trial, we suggest that the court should also define the term, "community property." Connellee v. Nees (Tex. Com. App.) 266 S. W. 502; Bowles v. Watson (Tex. Civ. App.) 245 S. W. 120.

The remaining assignments are overruled.

The judgment is reversed, and the cause remanded.