## HAMMONDS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 1832.

Circuit Court of Appeals, Tenth Circuit.

Aug. 30, 1939.

Fred P. Branson, of Muskogee, Okl. (W. K. Garnett and Chas. H. Garnett, both of Oklahoma City, Okl., on the briefs), for petitioner.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the briefs), for respondent.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals involving income taxes of Mamie S. Hammonds[1] for the years 1931 and 1932.

In exchange for personal services rendered in the state of Texas and elsewhere during coverture, petitioner acquired an undivided one-half interest in certain oil and gas leases situated in the state of Texas. She gave no consideration therefor other than her personal services.

Petitioner, her husband, O. O. Hammonds, and their co-owner sold and assigned certain of the leases in 1931 for an agreed cash consideration of $189,800, and a further consideration of $451,850 to be paid out of the assignee's share of the oil from the leases, as and when produced. $139,800 of the cash consideration was paid in 1931. The balance of the cash consideration remained unpaid due to the fact that certain checks given therefor were dishonored. An agreement was entered into whereby the unpaid balance of the cash consideration was to be paid in future installments. From the sale of the leases, petitioner and her husband received of the cash consideration $69,900 in 1931 and $17,392.50 in 1932. They also received from payments out of the oil produced $25,555.51 in 1932.

Petitioner and her husband filed separate income tax returns for the years 1931 and 1932 in which they treated the gain derived from the sale of the leases as community property and each returned one-half of such gain. They also treated the amount of the cash consideration paid in 1931 and 1932 as a cash bonus and claimed a depletion deduction of 27½ per cent thereof.

The Commissioner held that the entire consideration received for the leases in 1931 and 1932 was the separate property of petitioner, denied the depletion allowance, and proposed a deficiency against petitioner. The Board made a depletion allowance based on the payments received out of oil produced, otherwise sustained

---

[1] Hereinafter referred to as petitioner.

the action of the Commissioner, and ordered a deficiency assessment of $4,896.24 for the year 1931 and $1,799.54 for the year 1932.

### I. Were the Leases Community Property of Petitioner and O. O. Hammonds?

■ Petitioner and O. O. Hammonds were married in 1906 and since 1927 have been bona fide residents of Oklahoma City, Oklahoma. Under the laws of Oklahoma the earnings of the wife are her separate property.[2]

■ Under the law of Texas oil and gas in place are part of the realty and an oil and gas lease transfers to the lessee an interest in real estate.[3]

Articles 4613 and 4614 of Vernon's Ann.Texas Stat. Vol. 13, provide that all property, both real and personal, of a member of the community, owned or claimed by him or her before marriage and that acquired afterwards by gift, devise, or descent, and the increase of all lands thus acquired, and the rents and revenues derived therefrom, shall constitute his or her separate property.

Article 4619, Vernon's Ann.Texas Stat. Vol. 13, reads as follows:

"Sec. 1. All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife; * * * all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved."

■ It is a fundamental postulate of the community property system that whatever is gained during coverture, by the toil, talent, or other productive faculty of either spouse, is community property.[4]

Indeed, the sole source from which the community estate must arise is the toil, talent, or other productive faculty of the spouses and the earnings and income from community property itself.

■ While the community system is be-

[2] O.S.1931, §§ 1659, 1665, 32 Okl.St. Ann. §§ 9, 15; Enid City R. Co. v. Reynolds, 34 Okl. 405, 126 P. 193; Muskogee Electric Traction Co. v. Green, 91 Okl. 200, 217 P. 155.

[3] Dunn v. Tennant, Tex.Civ.App., 82 S. W.2d 728; Stephens v. Stephens, Tex. Civ.App., 292 S.W. 290, 294; Sibley v. Pickens, Tex.Civ.App., 273 S.W. 897; Stephens County v. Mid-Kansas Oil & Gas Company, 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Chesson v. Commissioner, 5 Cir., 57 F.2d 141.

[4] De Blane v. Lynch & Co., 23 Tex. 25, 29; Logan v. Logan, Tex.Civ.App., 112 S.W.2d 515, 525; In re Pepper's Estate, 158 Cal. 619, 112 P. 62, 64, 31 L. R.A.,N.S., 1092; In re Caswell's Estate, 105 Cal.App. 475, 288 P. 102, 104; Seeber v. Randall, 9 Cir., 102 F. 215, 216; Speed v. Gilliland, Tex.Civ.App., 18 S. W.2d 762, 764; Strickland v. Wester, 131 Tex. 23, 112 S.W.2d 1047, 1048; Pottorff v. J. D. Adams Co., Tex.Civ. App., 70 S.W.2d 745, 746; Succession of Howell, 177 La. 276, 148 So. 48, 50; Drewett v. Carnahan, La.App., 183 So. 103, 107; Blair v. Roth, 9 Cir., 22 F.2d 932, 933; Pedder v. Commissioner, 9 Cir., 60 F.2d 866, 867; Shea v. Commissioner, 9 Cir., 81 F.2d 937, 939.

In De Blane v. Lynch & Co., supra, the court said: "It is true, that in a particular case, satisfactory proof might be made, that the wife contributed nothing to the acquisitions; or, on the other hand, that the acquisitions of property were owing wholly to the wife's industry. But from the very nature of the marriage relation, the law cannot permit inquiries into such matters. The law, therefore, conclusively presumes that whatever is acquired, except by gift, devise or descent, or by the exchange of one kind of property for another kind, is acquired by their mutual industry."

In Logan v. Logan, supra, the court said [112 S.W.2d 525]: "In addition to the statutory negative definition of community property, a positive definition approximately correct may also be framed out of the materials of the typical community of the Spanish law, and community property may thus be defined as all property and pecuniary rights obtained by, or in the name of, either spouse after the marriage, by toil, talent, thrift, energy, industry, or other productive faculty, and all the rents, issues, profits, fruits, and revenues of separate property."

In Seeber v. Randall, supra, the court said [102 F. 216]: "Under the community law of Spain and Mexico, the community property embraced, among other things, the rents, issues, and profits of the separate property of the spouses, and all property, of whatever nature, which the spouses acquired by their own labor and industry. Schm. Civil Law Spain & Mexico, art. 44, pp. 12, 13; 6 Am. & Eng. Enc. Law, 308, and notes."

lieved to have had its origin in the Teutonic peoples, the community property statutes of Arizona, California, Idaho, Louisiana, New Mexico, Nevada, Texas, and Washington are drawn from the Spanish, Mexican, or French law. The statutes of France and Spain regulating the property rights of husband and wife were real, not personal, statutes. They operated on things and not persons and applied to all acquisitions made in those countries by married persons, whether resident or nonresident therein.[5]

And such is the construction placed upon the community property statutes of other jurisdictions where they are couched in general terms and make no reference to the residence of the spouses.[6]

In Heidenheimer v. Loring, 6 Tex.Civ. App. 560, 26 S.W. 99, 101, the court said:

"The statute of Texas declaring that all property acquired by either husband or wife during the marriage shall be deemed the common property of both will control as to real estate situated in Texas,

[5] Saul v. His Creditors, 5 Mart.,N.S., La., 569, 16 Am.Dec. 212; Cole's Widow v. His Executors, 7 Mart.,N.S., La., 41, 18 Am.Dec. 241; Williams v. Pope Mfg. Co., 52 La.Ann. 1417, 27 So. 851, 859, 50 L.R.A. 816, 78 Am.St.Rep. 390.

In Cole's Widow v. His Executors, supra, the court said:

"In the case of Saul v. His Creditors [5 Mart.,N.S., La., 569, 16 Am.Dec. 212], which lately underwent so much discussion in this court, principles were established, which greatly facilitate the investigation of the rights of the parties now before us. It is true in that case, husband and wife had both resided in this state; and in the present instance, the husband alone lived in Louisiana. But we then determined that the law, or, to adopt the language of the jurisprudence of the continent of Europe, the statute, which regulated the rights of husband and wife, was real, not personal; that it regulated things, and subjected them to the laws of the country within which they were found. It follows, then, as a consequence, that property within the limits of this state, must, on the dissolution of the marriage, be distributed according to the laws of Louisiana, no matter where the parties reside; because, viewing the statute as real, it is the thing on which it operates that gives it application, not the residence of the person who may profit by the rule it contains. *Quando verba consuetudinis, vel statuti, disponunt circa rem, tunc de bonis judicandum est secundum consuetudinem loci, ubi res sunt situatæ: quia consuetudo afficit res ipsas, sive possideantur a cive, sive a forensi.* Greg. Lopez, Gloss. 2, Par. 4, tit. 11, 1. 24, Matienso, lib. 5, tit. 9, b. 2, gl. 1, n. 25.
\* \* \*

"The law of the *fuero real*, it is true, does not speak of one of the spouses coming into the country, nor does it provide for the case where both live under another government, at the dissolution of the marriage; but it is a necessary consequence of the statute being real,

that the property acquired within the limits of the state, and found there on the marriage being dissolved, should be governed by its provisions, no matter where the parties reside."

In Williams v. Pope Mfg. Co., supra, the court said:

"It has been frequently held that the community law of this state is a real, and not a personal, statute; and the decisions on the subject refer to the opinion of our predecessors in the important and conspicuous case of Saul v. His Creditors, 5 Mart. (N.S.) [La.], 569 [16 Am.Dec. 212], as, the original source from which that doctrine emanated, in which the court, after a most extensive exploration of Spanish and French statutes and decisions interpreting them, and from which our statute is derived, made the following very conclusive statement, viz.: 'We think the state and condition of both husband and wife are *fixed by the marriage in relation to everything but property, independent of this law; and, as it regulates property alone, it is not a personal statute. \* \* \* We consider it real.*' (Our italics.) And, considering our community law a real statute, which deals with property that is situated in the state, and not with the personal rights or condition of the spouses, the court makes this observation, viz.: 'On the subject before us the writers who treat of it \* \* \* agree in stating that a *real statute*—that is, one which regulates property within the limits of the state where it is in force—controls *personal* ones, which follow a man wherever he goes. Indeed, it has been \* \* \* admitted that where the *personal statute of the domicile* is in opposition to a *real statute of situation,* the real statute will prevail.' (Our italics.)"

[6] Monroig v. Parker, 6 Porto Rico Fed. Rep. 595, 600, 601; Jacobson v. Bunker Hill & S. Mining & C. Co., 3 Idaho, Hasb., 126, 28 P. 396; Heidenheimer v. Loring, 6 Tex.Civ.App. 560, 26 S.W. 99, 101; Gratton v. Weber, C.C.Wash., 47 F. 852; 31 C.J. § 1079, p. 14.

although the parties may both reside in another state, where a different rule of law may apply to such property."

In Monroig v. Parker, 6 Porto Rico Fed.Rep. 595, 600, 601, the court said:

"Complainants allege that this law does not apply to an American citizen not domiciled in Porto Rico. There might be some question on the evidence as to where the domicil of the defendants is, but that is not material. The *lex rei sitae* governs all matters relating to real property. Unless a foreigner is prohibited from owning land, or except so far as conditions are affixed to his ownership, he holds land in Porto Rico upon the same title as anyone else. It is not material whether he comes to Porto Rico to live or not. Whatever rights in real property are given to a married woman by the Porto Rican law apply, so far as relates to the land owned, to the wife of the landowner, whether she ever comes to Porto Rico or not. There cannot be two laws governing the same real property at the same time."

In 11 Am.Jur. p. 182, § 11, the rule is stated as follows:

"In the absence of an antenuptial contract between the parties, the respective rights of the husband and wife in real property are governed by the law of the place where such property is situated, rather than by the law of the domicil of the parties or of the place where the marriage was celebrated. Accordingly, upon consideration of comity, real estate acquired in a state by a nonresident married couple is governed by the lex rei sitae."

In 23 Tex.Jur. 146, § 117, it is said:

"If the parties have their domicile in Texas, their acquisitions of personal property in another state are governed by our laws. If the acquisition be of real property in another state, comity requires that the title be determined by the law of the state where it is situated. Upon the same consideration of comity, real estate acquired in Texas by a nonresident married couple is governed by our law."

**■■** The general rule in the community property states that marital rights in lands, regardless of the residence of the husband and wife, are regulated by the law of the situs is subject to the qualification that where property is acquired in a community property state, through purchase by funds which are the separate property of one of the spouses, or in exchange for separate property of one of the spouses, the character of the funds or of the property given in exchange is transmitted to the property acquired.[7] Separate property remains separate through all its mutations and changes so long as it can be clearly and indisputably traced and identified.

**■** It is contended that the qualification should be extended to embrace not only property acquired with separate funds or through the giving in exchange of separate property, but also property acquired through the rendition of personal services. No authority is cited in support of this extension of the qualification to the general rule.[8] It is argued, however, that had petitioner received cash or other personal property in payment for her services, and with such cash or personal property acquired the leases in Texas, the latter would have been her separate property, and that the same result should follow where she exchanged her services directly for such leases.

To so hold would violate the fundamental concept of the community property system that property acquired during coverture through the toil, talent, or other productive faculty of either spouse is conclusively presumed to be community property. Furthermore, it would make the qualification or exception to the general rule that community statutes operate upon things and regulate the marital rights of land acquired in a community property

[7] Thayer v. Clarke, Tex.Civ.App., 77 S. W. 1050, 1052; In re Arms' Estate, 186 Cal. 554, 199 P. 1053, 1056; Brookman v. Durkee, 46 Wash. 578, 90 P. 914, 915, 12 L.R.A.,N.S., 921, 123 Am.St.Rep. 944, 13 Ann.Cas. 839; Mayor v. Breeding, Tex.Civ.App., 24 S.W.2d 542, 545; McKay on Community Property, 2d Ed., p. 431, § 639; 31 C.J. pp. 14, 15, §§ 1077, 1079.

[8] Joiner v. Joiner, 131 Tex. 27, 112 S.

W.2d 1049, is distinguishable. There, the real estate was acquired in Texas, not through the exchange of personal services, but with funds which were the earnings and separate property of the husband. Furthermore, Joiner and his wife separated in 1908 and were living separate and apart when the funds with which the Texas properties were purchased were earned by Joiner.

state by nonresidents as broad as the general rule itself, and leave no field of operation for the latter. Under the community property statutes, property acquired through gift, devise, or inheritance, and the increase or earnings thereof is separate property. Under the qualification, property acquired with separate property or funds is separate property. Community property is derived solely from the toil, talent, or other productive faculty of the spouses and from the earnings of community property itself. Thus, it will be seen that should we extend the qualification to embrace real property acquired through the toil, talent, or other productive faculty of the spouses, the result would be to encompass the general rule and make the qualification thereto the rule rather than the exception.

We conclude that the community property statute in Texas is a real statute; that it operates on things, not persons; and that real property acquired in the state of Texas during coverture by the toil, talent, or productive faculty of either spouse is community property, irrespective of the residence of the spouses.

The leases being community property, petitioner and O. O. Hammonds were entitled to file separate returns, each reporting one-half of the income derived from the sale thereof. See Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239.

II. Was Petitioner Entitled to a Depletion Allowance?

The petitioner was not a lessor. Her sole interest was that of lessee. She sold and assigned the whole of that interest in 1931. The cash consideration was not in the nature of a bonus or advance royalty. Rather, it was a part payment for the interest sold and assigned. The sole economic interest reserved by petitioner was in the oil runs to the extent of the consideration to be paid out of such runs. Hence, any depletion allowance should be predicated on that economic interest. It follows that petitioner was not entitled to an allowance or deduction for depletion on account of the cash consideration.[9]

Reversed and remanded with instructions to modify the order in accordance with this opinion.

---

[9] Commissioner v. Fleming, 5 Cir., 82 F.2d 324; Darby-Lynde Co. v. Alexander, 10 Cir., 51 F.2d 56; Helvering v. Elbe Oil Land Development Co., 303 U. S. 372, 58 S.Ct. 621, 82 L.Ed. 904; Laird v. Commissioner, 5 Cir., 97 F.2d 730.