JULIUS GOODMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOUIS H. HARRISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 87552, 87553. Promulgated June 6, 1939.

*Harry Thom, Esq.*, and *Benjamin A. Ragir, Esq.*, for the petitioners. *Gerald W. Brooks, Esq.*, for the respondent.

24

OPINION.

STERNHAGEN: The petitioners, upon the theory that their partnership had sustained a loss, each deducted a distributive share of the loss upon his individual return. The Commissioner determined a deficiency as to each, saying:

You reported a loss of $42,036.89 as your pro rata share from the Goodman and Harrison partnership. As the result of an investigation of the books and records of the partnership, it has been determined that your share of the taxable income from the partnership is $703.46 [$703.47].

He thus adopted the partnership theory but disallowed the proportionate losses of the individual members.

Although the pleadings were not clear, the parties agreed at the opening of the trial that the issue was whether the undisputed loss on the 175th Street property in 1934 was deductible as a capital loss under the Revenue Act of 1934, section 117 (b), or as an ordinary loss. Upon this issue, it is not of primary importance whether these petitioners carried on all of their activities in partnership, as they contend, or whether their interest in the Harrison Trust, which held the Niles Center property, was that of individual members or of the partnership. These are but evidentiary questions. The loss here in question occurred in 1934 from the transfer to the mortgagee of the 175th Street property to discharge the mortgage and the petitioners' obligation thereon, and the only question is whether this loss was a capital loss. This in turn depends upon whether the 175th Street property was held by the taxpayers "primarily for sale to customers in the ordinary course of their trade or business."

If the holding of this property were an isolated holding dissimilar from any other transaction and unrelated to the history of the petitioners' activities, it might be questionable whether the mere purchase of the property, subjecting it to a mortgage, holding it for nine years, and then, without more, transferring it to the mortgagee for the acquittance of the mortgage, would be sufficient to constitute a

statutory capital loss. It might be still more unfavorable to the petitioners if the only circumstances were that they had bought another tract which within six months they had sold *en bloc* at a gain. These two transactions by themselves would fall short of establishing that the properties or either of them had been held by the owners for sale to customers in the ordinary course of their business. Compare *Phipps* v. *Commissioner*, 54 Fed. (2d) 469; but see *Snell* v. *Commissioner*, 97 Fed. (2d) 891.

But the petitioners have established that they bought this property as the Harrison Trust had bought the Niles Center property, for subdivision and sale in lots to customers as they could be found. The evidence leaves little room for doubt that this was the primary purpose of the petitioners with regard to the 175th Street property, as it demonstrably was with regard to the Niles Center property. It is true that the 175th Street property remained inactive. This was due first to the activity at Niles Center which took so much time and attention that the 175th Street property was for the time being neglected, and then to the slump in the real estate market which reasonably compelled suspense. The original purpose, however, remained. It can not be that business adversity of itself converted it into a purpose of investment, nor did the demand of the mortgagee. Those seem to us to have been disappointing incidents of the primary purpose of ordinary business—no less so than a failure to succeed in the grocery business.

The fact has been found, therefore, from the evidence, that the property was held, as the statute prescribes, primarily for sale to customers in the ordinary course of the taxpayers' business. The loss is, therefore, deductible as an ordinary loss, and the Commissioner's determination is reversed.

*Decisions will be entered under Rule 50.*