*Decision will be entered under Rule 50.*

THOMPSON LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99854. Promulgated February 27, 1941.

*John L. Connolly, Esq.,* for the petitioner.
*Jonas M. Smith, Esq.,* for the respondent.

## OPINION.

MELLOTT: The question is the narrow one: Was the loss sustained through the sale of capital assets, as such term is defined in section 117 (b) of the Revenue Act of 1936,[1] or was it an ordinary loss,

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

        *      *      *      *      *      *      *

    (b) DEFINITION OF CAPITAL ASSETS.—For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.

deductible from gross income in its entirety? There is no dispute as to the amount of the loss.

It can not be gainsaid that the real estate constituted "property held by the taxpayer." Petitioner does not contend that it was "stock in trade" or "property of a kind which would properly be included in * * * inventory * * * if on hand at the close of the taxable year." It argues only that it was "property held * * * primarily for sale to customers in the ordinary course of * * * [its] trade or business."

The words "to customers" and "ordinary" were first incorporated in the provisions of the revenue act dealing with capital gains and losses by the amendment made in 1934. (Cf. section 101 (c) (8), Revenue Acts of 1928 and 1932.) They tend to narrow the deductions which may be taken as ordinary losses, *O. L. Burnett*, 40 B. T. A. 605, or, as pointed out by the Supreme Court in *Helvering* v. *Hammel*, 311 U. S. 504, "to enlarge the class of deductible losses made subject to the capital assets provisions * * *." The section as amended must be construed precisely as written and unless the particular property in question was held by petitioner "primarily for sale to customers in the ordinary course of *. * * [its] trade or business" the loss is limited as provided in section 117 (d) of the Revenue Act of 1936 to $2,000, plus the gains from sales or exchanges of capital assets.

Petitioner's principal business was buying and selling lumber, building materials, air conditioning equipment, and similar property. According to its income tax returns its gross sales of such materials at its three yards aggregated approximately three-quarters of a million dollars annually. The testimony of its president indicates that the acquisition of real estate was only incidental to its lumber and material business. In response to a question whether the purpose of the company in acquiring the properties in question was to secure a debt he responded: "Absolutely"; and when asked if the properties had been taken over in lieu of payment for an account of merchandise, he replied in the affirmative.

Petitioner points out that its corporate charter empowers it to acquire, hold, and dispose of all kinds of real estate. Whether this power is merely incidental to its lumber and material business or whether it authorizes it to conduct a general real estate business is probably immaterial. In our opinion the evidence fails to show that it was engaged in the real estate business to any extent. It never purchased real estate for the purpose of selling it at a profit. Cf. *Julius Goodman*, 40 B. T. A. 22. As stated by its counsel at the hearing, "it didn't have sufficient funds to go outside and buy investments purely for an investment purpose, but only as conduct-

ing its business." True it occasionally sold a piece of real estate; but it is interesting to note that in most, if not in all, of the sales made by it during the taxable years the usual real estate agent's commission was paid.

Several cases have been decided by the courts and this Board in which the question was substantially the same as that now before us—whether a sale was, or was not, a sale of a capital asset. Petitioner places considerable reliance upon *Harr* v. *MacLaughlin*, 15 Fed. Supp. 1004, decided under the Revenue Act of 1928 (sec. 101 (c) (8)), which only required that the property be "held by the taxpayer primarily for sale in the course of his trade or business." In that case a title and trust company, authorized to transact a banking, trust, and title business and to engage in the real estate business, had purchased some property at foreclosure. It was shown that such property, including other pieces similarly acquired, "was held solely for the purpose of sale, and that it was continually offered for sale by the usual real estate methods." The court held that the bank did not hold it as an investment or for other permanent use and that the loss upon its sale "was properly a deductible one from the income reported." The respondent, basing his opinion largely upon the cited case, subsequently ruled (G. C. M. 21497, C. B. 1939-2, p. 187; I. T. 3336, C. B. 1939-2, p. 189) that gains derived, or losses sustained, by building and loan associations, mortgage finance companies, banks, and insurance companies other than life insurance companies in disposing of real estate which had been taken over by such institutions on default of mortgage loans, are to be treated as ordinary and not as capital gains or losses.

Whether the ruling is correct or not need not be decided. It suffices to point out that petitioner, unlike the plaintiff in the *Harr* case, did not maintain a real estate department and was not actively engaged in buying and selling real estate. As pointed out above, it made no purchases of such property for sale to customers. Its real estate (other than lumber yards) appears to have been acquired solely for the purpose of minimizing or preventing loss upon lumber and building materials sold by it. The time devoted by petitioner's officers and employees to disposing of its real estate was infinitesimal in comparison with the time devoted to the lumber or material business. So far as the record shows, petitioner never held itself out to be engaged in the real estate business to any extent. It never secured any license from the county, city, or state to engage in such business. In its income tax returns it stated that it was engaged in the wholesale and retail lumber business. This clearly was its real business and its "customers" in the "ordinary course of its trade or business" were, we think under the evidence

before us, only the purchasers of lumber, hardware, building materials, air conditioning equipment, and similar property.

It is true, as petitioner points out upon brief, that a taxpayer may be engaged in more than one trade or business. *Richards* v. *Commissioner*, 81 Fed. (2d) 369; *Ben L. Carroll*, 21 B. T. A. 724; affd., 70 Fed. (2d) 806; *Julius Goodman, supra; Snell* v. *Commissioner*, 97 Fed. (2d) 891. But business, says the court in *Snell* v. *Commissioner, supra*, "means busyness; it implies that one is kept more or less busy, that the activity is an occupation." An occasional sale is not enough. The "taxpayer must, to defeat his claim to a capital gains rate, have been in the business of selling his land." Cf. *Kales* v. *Commissioner*, 101 Fed. (2d) 35. Petitioner has failed to show that it was in the business of selling its lands. Cf. *Carroll* v. *Commissioner, supra; Louise C. Slack et al., Executors*, 35 B. T. A. 271. In reaching this conclusion we have not overlooked the testimony to the effect that petitioner, after acquiring the various properties, endeavored to sell them, placed for sale signs upon them, advertised them in the papers, listed them with various real estate agents, and furnished lists of them to its own officers and agents. This evidence, though no doubt showing a bona fide effort to dispose of the property, falls far short of proving that petitioner was in the real estate business or that the property was held as prescribed by the statute. Since no such finding can be made, it follows that the deficiencies determined by the Commissioner must be approved.

*Decision will be entered for the respondent.*