Alexander Weil v. Commissioner. Ada Weil v. Commissioner. Joseph L. Weil v. Commissioner. Mae Weil v. Commissioner. Bertha A. Weil v. Commissioner. Moise Weil v. Commissioner.
Weil v. Commissioner
Docket Nos. 1449, 1450, 1451, 1452, 1453, 1454.
United States Tax Court
1944 Tax Ct. Memo LEXIS 221; 3 T.C.M. (CCH) 528; T.C.M. (RIA) 44193; June 3, 1944
*221 In 1934 petitioners acquired certain real estate situated on the outskirts of a city. The property was acquired in a mortgage foreclosure proceeding. Petitioners' principal business was that of engaging in the retail grocery business as partners, and at the time this property was acquired petitioners had no intention or desire to engage in the real estate business. Later a state highway was put through this property and in 1939 petitioners platted a portion of the property lying on each side of the highway and advertised the lots for sale. This subdivision was known as "Ebony Acres". During the taxable years 1940 and 1941 petitioners sold several lots from Ebony Acres and also made some isolated sales of portions of the remainder of the tract which had not been subdivided into lots. Held, during the taxable years all of the lots situated in Ebony Acres were held by petitioners primarily for sale to customers in the ordinary course of their business of selling real estate and could not therefore be included in the term "capital assets" as defined in section 117 (a) (1) of the Internal Revenue Code. Held, further, that the remainder of the tract which they had continued to *222 hold and had not subdivided constituted capital assets within the meaning of section 117 (a) (1), I.R.C., and the gain from the sale of this part of the tract in the taxable years is taxable at the capital gain rates. Wesley E. Seale, Esq., 1108 Nixon Bldg., Corpus Christi, Tex., for the petitioners. Loyal E. Keir, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion These proceedings, duly consolidated, involve income tax deficiencies, determined against petitioners for the calendar years 1940 and 1941 in amounts as follows: Petitioner
Docket No.
1940
1941
Alexander Weil
1449
$348.29
$1,106.14
Ada Weil
1450
311.61
647.12
Joseph L. Weil
1451
148.44
213.51
Mae Weil
1452
348.29
1,106.13
Bertha A. Weil
1453
155.77
213.51
Moise Weil
1454
311.61
647.12
The above deficiencies result from several adjustments to the net income as reported by petitioners, some of which are contested by appropriate assignments of error and some of which are not contested. In a statement attached to the deficiency notice of each petitioner the respondent explained the contested adjustments in substantially identical language as follows: (c) and (f) In your *223 income tax returns for 1940 and 1941 you reported gains realized from sales of lots in the subdivision Ebony Acres as long-term capital gains subject to the 50 percent limitation of Section 117(b) of the Internal Revenue Code. It has been determined that such subdivision lots were held primarily for sale to customers in the ordinary course of trade or business within the meaning of Section 117(a)(1) of the Internal Revenue Code and that the gains realized therefrom are not subject to the 50 percent limitation of Section 117(b), Internal Revenue Code. Accordingly, the profits you reported from this source as community income of $1,210.94 for 1940 and $3,149.27 for 1941, after being adjusted to $2,726.88 for 1940 and $4,485.14 for 1941, are deemed to be 100 percent taxable and your community income has been adjusted accordingly. (d) Gain on sale of improved real estate, shown as follows: Sale price
$7,100.00
Less: Cost and expense
5,728.37
Gain
$1,371.63
Your one-third interest
457.21
Amount reported
80.06
Adjustment
$ 377.15
Adjustment (d) above applies to the year 1940 only. Petitioners, by amended petitions, assign one error as follows: The Commissioner has erroneously *224 determined that the sale of certain lots and tracts of land sold during the years 1940 and 1941 by said partners of Weil Brothers out of a tract of 626.65 acres of land lying close to the city of Corpus Christi, Texas were held primarily for sale to customers in the ordinary course of trade or business, and that the gains realized therefrom are not subject to the 50% limitation provided by Section 117(b) of the Internal Revenue Code. Findings of Fact Petitioners are individuals and reside at Corpus Christi, Texas. Separate returns for the years involved were filed with the Collector of Internal Revenue for the First District of Texas at Austin, Texas. Petitioners Alexander Weil, Joseph L. Weil, and Moise Weil (who will here-after, for convenience, be referred to as "petitioners," their wives being joined herein because they filed separate returns on the community property basis) are members of a partnership doing business in Corpus Christi under the name and style of "Weil Brothers." Mae Weil, Bertha A. Weil, and Ada Weil are the wives respectively of said petitioners. The principal business of Weil Brothers is the retail grocery business. Petitioners, together with certain other *225 brothers, are engaged in additional businesses, including the operation of a large ranch near Hebronville, Texas, which is managed by a separate partnership known as "Charles Weil Sons," and the operation of a farming parnership styled "Weil Brothers Farms," which owns farm land near Corpus Christi. In addition to these activities, petitioners also are extensively engaged in the business of renting real estate, and they own oil interests from which they derive royalties. The real estate involved in these proceedings, sometimes referred to herein as the Kington tract, consists of 626.65 acres and lies within the five-mile limit of the City of Corpus Christi. Petitioners acquired the property in mortgage foreclosure proceedings following certain litigation involving the mortgagor, W. W. Kington, and they received the deed on October 25, 1934. The Weil Brothers partnership had originally lent $28,000 on the land in 1929 and petitioners paid $2,250 in acquiring the deed in 1934. The total outlay for the property, including the cost of improvements and development, was in excess of $85 per acre, or an aggregate of approximately $53,000 for the 626.65 acres. Deducting from the latter figure *226 the sum of $30,250 (original loan of $28,000 plus $2,250 paid in obtaining a deed in 1934) leaves approximately $22,750 as the amount expended for improvements and development of the Kington tract subsequent to acquisition. The deed to the property in question was executed in favor of petitioners individually, each receiving an undivided fractional interest therein. No sales of any part of the Kington tract were made by petitioners during the years 1934 to 1939 because of the economic depression prevailing in Corpus Christi. The property, however, was available for sale during this period. On or about August 14, 1939, petitioners platted about 90 acres of land lying on each side of State Highway No. 9, and within the Kington tract. Highway No. 9 extends from Corpus Christi to San Antonio, Texas, and runs through the Kington tract. The map was duly recorded in the office of the County Clerk of Nueces County, Texas, and the subdivision represented by said map was designated as "Ebony Acres." One hundred twenty lots are contained in the subdivision. The addition was subdivided by a land surveyor. His services were performed pursuant to petitioners' authorization and they had full *227 knowledge of his performances. Petitioners paid him a fee for his services in laying out the subdivision. The right-of-way for Highway No. 9 was condemned while the property in question was in the process of litigation preceding the aforesaid foreclosure proceedings. Construction of the highway was started in about 1935 and it was completed to San Antonio in 1937. After the map of Ebony Acres was accepted by the county, a road called "Hall Avenue" was graded by the county along the northern boundary of the subdivision which was north of and ran parallel to No. 9 Highway. Petitioners dedicated to the county 15 feet extending for a full mile along the eastern boundary of the Kington tract for the purpose of widening and paving a road known as "Lawrence Lane." A few years after acquiring the Kington tract, petitioners made an agreement with the Central Light and Power Company of Corpus Christi, whereby petitioners granted the company a right-of-way and the latter established a highpowered electric line which was set back off of No. 9 Highway. The power company agreed that if petitioners should create a subdivision as then planned, electric power would be furnished in the addition *228 at the same rates obtaining in Corpus Christi. Petitioners constructed sewers, a two-inch water line and a two-inch gas line through the subdivision. They offered to the State Highway Department a tract of land on either side of No. 9 Highway with the request that it be beautified. An attempt was made to obtain F.H.A. approval of the addition for loans, and petitioners offered the Independent School District 15 acres north of Hall Avenue if the authorities would agree to build a school thereon when it became necessary. Petitioner Alexander Weil placed his son, Alexander Weil, Jr., a licensed real estate dealer, in one of the rent houses which petitioners had constructed on the addition in order that they might ascertain whether there would be any demand for the property. Sign boards were erected at each end of the addition in which it was stated that anyone interested in the addition should see Alexander Weil, Jr. or their own broker. Petitioners also ran a newspaper advertisement announcing the new addition and suggesting that anyone interested therein should inquire at the sources aforestated. Sales of real estate were made through real estate dealers and brokers to whom petitioners *229 paid commissions. Petitioners executed the deeds. During 1940 petitioners sold two houses and lots out of Ebony Acres for a total consideration of $7,100. These sales resulted in a net gain of $1,371.63, one-third of which amounts to $457.21. During 1940 petitioners also sold three tracts out of the Kington tract but outside of Ebony Acres for a total consideration of $9,500. These sales resulted in a net gain of $8,180.66, one-third of which amounts to $2,726.88. During 1941 petitioners sold 11 lots out of Ebony Acres for a total consideration of $8,950. These sales resulted in a net gain of $8,218.86, one-third of which amounts to $2,739.62. During 1941 petitioners also sold three tracts out of the Kington tract but outside of Ebony Acres for a total consideration of $6,000. These sales resulted in a net gain of $5,236.56, one-third of which amounts to $1,745.52. (The amount of $1,745.52 plus the above amount of $2,739.62 equals the amount of $4,485.14 mentioned in the above-mentioned statement attached to the deficiency notice of each petitioner.) Petitioners handled their own financing. They made sales under contract, retaining title until at least one-third of the sale price *230 was received. The purchasers paid a nominal sum down and the balance was liquidated in monthly installments. During the taxable years 1940 and 1941 petitioners were engaged in the business of selling real estate to the extent that they made sales out of Ebony Acres, which subdivision was laid out by petitioners and placed on sale by them. The 120 lots contained in this subdivision were held by petitioners primarily for sale to customers in the ordinary course of that business. The balance of the Kington tract was not held by petitioners primarily for sale to customers in the ordinary course of any trade or business but was held as a capital asset. Opinion BLACK, Judge: The question in these proceedings is whether the agreed-upon gain from the sales of certain portions of the Kington tract during the taxable years 1940 and 1941 is taxable as capital gain as contended for by petitioners or as ordinary gain as determined by the respondent. In order for the gain to be taxed as capital gain it is a statutory prerequisite that the property which petitioners sold be classified as "capital assets" as that term is defined in section 117 (a) (1) of the Internal Revenue Code, the material *231 provisions of which are as follows: The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business * * * If, during the taxable years, petitioners were engaged in the business of selling real estate, and if the portions of the Kington tract which were sold during those years were held by petitioners primarily for sale to customers in the ordinary course of that business, then the gain derived from the sales is taxable as ordinary income and not as capital gain. Snell v. Commissioner, 97 Fed. (2d) 891. See also Mertens, Law of Federal Income Taxation, Vol. 3, sec. 22.08 where the cases on this question are collected and analyzed. Petitioners primarily contend that they were not engaged in the real estate business; that they took over the Kington tract solely to protect a loan which they had made on the property; that their principal business had been the retail grocery business for 42 years; that they had no intention or desire to engage in the real estate business; *232 and that the facts here are almost identical with those in Thompson Lumber Company, 43 B.T.A. 726. In the alternative, petitioners contend that if any of the sales made during the taxable years be held to consist of sales of "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" then the only sales answering that description were the sales made out of the tract known as Ebony Acres, which subdivision was laid out by petitioners and placed on sale by them; and that the sales from the balance of the Kington tract were merely isolated sales of property held by the taxpayer not primarily for sale to customers in any trade or business but as a capital asset. It may be true that when petitioners originally acquired the Kington tract they had no intention or desire to engage in the real estate business. But in determining whether property was "held" primarily for sale it is not controlling that when purchased it was not purchased primarily for the purpose of resale. What happens later may fix that purpose. Richards v. Commissioner, 81 Fed. (2d) 369. We think that *233 when petitioners platted that part of the Kington tract lying on each side of State Highway No. 9 and advertised the lots for sale as the Ebony Acres subdivision, they entered into the real estate business as far as that subdivision is concerned, and that the lots contained therein constituted property held by petitioners primarily for sale to customers in the ordinary course of their trade or business. See Richards v. Commissioner, supra;Welch v. Solomon, 99 Fed. (2d) 41; Ehrman v. Commissioner 120 Fed. (2d) 607; James Lewis Caldwell McFaddin, 2 T.C. 395, 404-405; and C. W. Oliver v. Commissioner, 138 Fed. (2d) 910. We, therefore, sustain the respondent's determination as to those sales made during the taxable years from the Ebony Acres subdivision. We do not think, however, that the balance of the Kington tract exclusive of Ebony Acres was properly held by petitioners primarily for sale to customers in the ordinary course of any trade or business. They had not subdivided any of this property. They were not advertising it for sale. *234 They merely continued to hold it as they had held it from the beginning. We think the facts relative to this part of the Kington tract are substantially similar to the facts in Phipps et al. v. Commissioner, 54 Fed (2d) 469; Pope et al. v. Commissioner, 77 Fed. (2d) 599; Thompson Lumber Company, supra; and United States v. Robinson, 129 Fed. (2d) 297. See also Leonhard Felix Fuld, 44 B.T.A. 1268, aff'd 139 Fed. (2d) 465. In the Fuld case the taxpayers, who were brother and sister, had prior to October 9, 1930, purchased securities primarily for long term investment. On October 9, 1930, they entered a business of buying and selling securities and were so engaged during the taxable years 1933 and 1934. During the taxable years they sold some of the securities that had been purchased prior to October 9, 1930, and based upon the fact that such securities "were not themselves available for or used in the speculative business in which the taxpayers became engaged" it was held that such securities *235 continued to be held as capital assets up until the date of sale. This we think is a comparable situation to the sale by petitioners in the taxable years of that part of the Kington tract which had not been subdivided, namely, all of the Kington tract except Ebony Acres. As to the sales made during the taxable years from this part of the Kington tract we hold that they were sales of capital assets within the meaning of section 117 (a) (1), I.R.C., and that the gain therefrom is taxable at the capital gain rates. Decisions will be entered under Rule 50.