**TRAPP v. UNITED STATES.**

Civ. No. 3066.

District Court, W. D. Oklahoma.

July 12, 1947.

386

Ram Morrison, of Oklahoma City, for Trapp.

Lester L. Gibson, Sp. Asst. to the Atty. Gen., and Robert E. Shelton, U. S. Atty for Western District of Okla., of Oklahoma City, for the U. S.

BROADDUS, District Judge.

*Jurisdiction.*

1. This action is to secure a refund of income taxes paid to H. C. Jones, Collector of Internal Revenue for the United States within Oklahoma. As Jones was not the collector at the time the suit was filed, it was properly filed against the United States in the Western District of Oklahoma. 28 U.S.C.A., § 41(20).

2. Plaintiff filed the required income tax return for the calendar year 1940 and paid the tax calculated thereon. Subsequently the Commissioner of Internal Revenue assessed additional tax and interest in the amount of $2,534.21 which plaintiff paid November 16, 1944. On October 30, 1945, he filed with the above Collector a claim for refund. The Commissioner of Internal Revenue having failed to render a decision on that claim in six months, this action was filed June 11, 1946. As it was begun after the expiration of the period of six months, and within two years after the expiration of such period, the action may be maintained. 26 U.S.C.A. Int.Rev. Code, § 3772 (a) (1) (2).

Items agreed upon at the Trial.

3. Three matters contained in the controversy were agreed upon by the parties at the trial of the case. Though these findings of fact and conclusions of law will not treat them, they will be covered by the journal entry of judgment. Those matters were the depletion and depreciation on certain oil properties alleged to have been owned jointly by the taxpayer and his wife in the respective amounts of $1,527.65 and $302.73; allowance of the $1,251.59 repair bill on taxpayer's former home as deductible expense to the extent of $751.59 with the remaining $500 to be capitalized; and refund to taxpayer of $473.32 conceded by the government to have been a clerical error in the deficiency assessed and collected.

Alleged Partnership of Trapp and Wife.

4. Prior to the marriage of the taxpayer and Lou Strang Trapp in 1907, Mrs. Trapp had a fund of $12,000 to $15,000 composed of her savings and inheritance which she placed in her husband's charge. After two or three years during which he handled the fund in her name, the bank account was transferred to their joint account. The fund was used in connection with the bond business engaged in by taxpayer after he completed his term as auditor for the State of Oklahoma some 35 years ago. Mr. Trapp was lieutenant governor from 1915 to November, 1923 and governor until 1927. Thereafter he became successful in the oil leasing and production business which has continued to be the line of his vocational endeavor.

5. The businesses of the taxpayer have been conducted by Trapp. Mrs. Trapp has never taken an active part in any of the businesses regardless of whether her original fund was being used in them or not. She was occasionally consulted on deals of major importance. She never added any additional money to the original amount, never withdrew any of it, and has never received a distribution of any increment to or profit from it or any of the businesses in which it was used. In 1935, for the first time, taxpayer divided his income between himself and his wife and then only for his federal income tax return. Between that year and the year in question, 1940, he continued to make equal division of his income with his wife on income tax returns.

6. The Trapps never filed a partnership information tax return. During the years of their marriage there has never been a written agreement of partnership. Purchases were all made in Trapp's name, as a general rule, and neither Trapp nor his wife held out any of Trapp's ventures as partnership transactions. On the contrary, he operated and carried on all the business ventures as his own. The joint bank account and the adding of Mrs. Trapp's name to the investment account of the oil business in 1938 did not establish a partnership. It is clear that the withdrawals by Mrs. Trapp were only for household expenses, clothes and other housewife expenditures.

7. If a business partnership existed during the early married life of the Trapps through the use of Mrs. Trapp's funds, a question not decided, the evidence fails to establish the continuation of that relationship. The long course of conduct heretofore recited strongly refutes such an assumption; we must examine the question in the light of the relevant facts more nearly related in point of time to the tax year in question. The taxpayer's evidence in that respect is not sufficiently strong to overcome the Commissioner's finding that there was no partnership.

Conclusions of Law

A. The Commissioner's ruling that the Trapps were not partners presumptively is correct and the plaintiff has the burden of overcoming such presumption by persuasive evidence. Commissioner v. Tower, 327 U.S. 280, 286, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. Whether a partnership existed is not a matter of Oklahoma law, but is governed by the interpretation of federal tax law and the federal cases. Commissioner v. Tower, supra; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. The plaintiff, having failed to establish a genuine partnership within the meaning of 26 U.S.C.A.

Int.Rev.Code, §§ 181 and 182, may not escape upon this issue any tax on income earned by him and due under 26 U.S.C.A. Int.Rev.Code, § 22(a).

The Effect of An Agreed Judgment Pertaining to 1935 Taxes and Whether the Income From the Texas Property was Community Income.

8. The preceding findings and conclusion of law do not dispose of the question of whether certain income from Texas oil properties, reported as equally divided in the 1940 income tax returns, was properly divided between the Trapps as community income. The largest part of the deficiency tax assessed against the taxpayer was based on disallowance of the division between husband and wife of the income from Texas properties.

9. The taxpayer for the year 1935 returned the income from the Texas oil properties as community income of himself and his wife. The division was disallowed and a deficiency assessed. Administrative proceedings for refund were had and upon refusal suit was filed with the Board of Tax Appeals seeking allowance of the refund. Therein the taxpayer complained of the deficiency assessment because of the failure of the Commissioner to recognize the income from the Texas oil properties as community income under the Texas law to be reported one-half by each of the Trapps. Though the title to the property was taken by Trapp in his name he asserted the consideration for such property was personal services rendered by him in Texas in obtaining the properties and by funds of himself and wife. He filed in the case a supporting affidavit.

10. The Tenth Circuit Court of Appeals in August of 1939 in the case of Hammonds v. Commissioner, 106 F.2d 420, held that in a community property state the law of such state applied to all acquisition of lands therein by married persons though they might be non-residents. After this decision and considerable negotiations the deficiency was calculated according to taxpayer's contentions. The stipulation and order were based upon such calculation. There was no stipulation of facts and no decision of the Tax Court based upon such facts

11. There was never a trial of the case. A stipulation was agreed upon stating the amount of a deficiency, which deficiency excluded any tax upon the one-half of the income from the Texas properties attributed to the income of Mrs. Trapp. Upon this stipulation an order was entered May 15, 1940 which recited: "Ordered and Decided: That there is a deficiency in federal income tax for the year 1935 in the amount of $643.32."

Conclusion of Law

■ B. Issues "actually litigated" in federal income tax proceedings operate as an estoppel in any subsequent action in which the point to be decided is the same as that litigated in the preceding action. Tait v. Western Md. Ry. Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405; New Orleans v. Citizens' Bank, 167 U.S. 371, 17 S.Ct. 905, 42 L.Ed. 202. Conceded or agreed orders not based upon an actual hearing or determination are not within the rule and afford no basis for estoppel by judgment. Riter v. Commissioner, 3 T. C. 301; see Hartford-Empire Co. v. Commissioner, 2 Cir., 137 F.2d 540. The agreed order on the 1935 tax was without effect in this action.

The Nature of the Income From the Texas Leases.

■ 12. The King, Crisp and Bob White leases in Texas were purchased by taxpayer in 1932 with cash and with personal services rendered by Trapp in Texas in obtaining the leases. As the record does not disclose the amount that should be attributed to either cash expenditure or to the services, it will be necessary to ascertain this fact by further hearing or by agreed statement. To the extent of the services the property is community property and to the same extent is the income therefrom. The proof is insufficient to overcome the Commissioner's finding that the cash used in the acquistion was neither community or partnership property. Again, the taxpayer must rely upon the joint bank account and the contribution by Mrs. Trapp of $15,000 at the beginning of the marriage. What has been heretofore determined in Findings No. 4 to 7, inclusive, applies here. Furthermore the fund re-

ceived from Mrs. Trapp had been invested in municipal bonds with the profits therefrom and were so invested when the properties here considered were purchased. Tr. 32. Trapp still holds them. Tr. 32.

13. The Moseley and Milas leases were purchased by the taxpayer in partnership with one Blankenship formed for that purpose. Each contributed one-half of the purchase price, approximately $17,000, the taxpayer having borrowed funds for his portion of the investment. Mrs. Trapp was not obligated for these borrowed funds, had nothing to do with the purchase, and her name did not then appear as being interested in the investment account on the books of the taxpayer. She had no interest in the property.

Conclusion of Law

C. In community property states the marital rights in lands are regulated by the law of the situs, regardless of spouses' residence. Hammonds v. Commissioner, 10 Cir., 106 F.2d 420. The rule is subject to the qualification that the separate character of funds or property given in exchange for property is transmitted to the property acquired. Noble v. Commissioner, 10 Cir., 138 F.2d 444; Hammonds v. Commissioner, supra. The money borrowed by Trapp and any cash Trapp may have had on hand which went into the Moseley and Milas leases was his separate property and his interest in the partnership leases was therefore separate property. It follows that the income therefrom should have been reported on his 1940 return without division. Noble v. Commissioner, supra. This is equally true as to the cash used in purchase of the King, Crisp and Bob White leases.

Land Sales

14. The Trapp and Blankenship partnership owned stock in the National Bond and Mortgage Company which held a number of first mortgages on farm lands. In 1937 the stockholders determined to dissolve the corporation. Trapp & Blankenship was interested in securing a large number of scattered mineral interests as well as salvaging its investment in the corporation so the partnership surrendered its stock in exchange for mortgages and land held by the company. Many of the tracts had been abandoned, taxes had accumulated to a large amount and the titles were in an unsatisfactory condition. The mortgages and lands were transferred to W. W. Williams, Trustee for Trapp & Blankenship, for clerical reasons. Mr. Williams was office manager and bookkeeper for the partnership oil business and Mr. Trapp's individual interests. Along with his regular duties he began to foreclose the first mortgages, clear up the titles, pay taxes, collect rents and generally supervise the properties. He spent an average of one and one-half days per week in these activities, but made no positive effort to sell them. The amount of his time consumed by sales was negligible and no other individual handled these lands on behalf of the partnership.

15. The partnership had acquired about 175 tracts and to date approximately 100 tracts—surface only—have been sold. In the year in question, 1940, the record shows 21 sales and collections on 40 sales made in the three prior years. Sales were made to get money to pay taxes and other expenses, and to reduce the capital investment in the minerals retained. The partnership still owns all the mineral interests. No new lands were acquired. No improvements were made on the properties to aid saleability. No sales or promotional activities were used. Generally the sales were made when someone desiring to buy would express the desire to Mr. Williams who made the sales if the bid price was satisfactory.

16. The taxpayer never held himself out as a real estate dealer, never possessed any kind of license for such business, has never been a salesman, broker or developer of real estate, and the portion of his income attributable to the profits from these sales was very small.

17. The tracts were not held primarily for sale to customers in the ordinary course of the taxpayer's business. He properly reported the profits on the sales as capital gains.

Conclusions of Law

D. The issue is whether the profits received from the sale of the taxpayer's

lots were, under the facts found, a sale of capital assets, only one-half of which profits may be subjected to income tax, or whether the profits from such sales arose from the sale of property held primarily for sale to customers in the ordinary course of the taxpayer's trade or business in which event the whole of the gain is subject to income tax as ordinary income. 26 U.S. C.A. Int.Rev.Code, § 117. The issue is one of fact. Reynolds v. Commissioner, 1 Cir., 155 F.2d 620; Van Suetendael v. Commissioner, 2 Cir., 152 F.2d 654; Estate of Kleberg v. Commissioner, 7 T. C. 1488; and see Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; Fuld v. Commissioner, 2 Cir., 139 F.2d 465.

■ The existence of certain circumstances such as the regularity and continuity of sales (Higgins v. Commissioner, supra; Brown v. Commissioner, 5 Cir., 143 F.2d 468), the nature of the acquisition of the property or purpose of acquisition (Kanawha Valley Bank v. Commissioner, 4 T.C. 252; Thompson Lumber Co. v. Commissioner, 43 B.T.A. 726; Jones v. Commissioner, 1 T.C. 1214; Three States Lumber Co. v. Commissioner, 7 Cir., 158 F.2d 61, reversing 5 T.C. 1391), the nature and extent of taxpayer's "business" (Flint v. Stone Tracy Co. 220 U.S. 107, 171, 31 S. Ct. 342, 55 L.Ed. 389, Ann.Cas. 1912B, 1312), the activity of the taxpayer in promoting the sales (Haden v. Commissioner, 2 T.C. 1268; Oliver v. Commissioner, 1 T.C. 1215, affirmed 4 Cir., 138 F.2d 910; Swanston v. Commissioner, 1 T.C. 1216), and other circumstances are the factors to be considered in arriving at a decision. No one of these facts is decisive but the solution must depend upon all the pertinent facts and their relative importance in each case.

■ Here the taxpayer's business was oil development and production, not the real estate business; the property was acquired incident to the dissolution of an insolvent corporation in which taxpayer's partnership owned stock and was held for the purpose of securing a scattered spread of mineral interests for his oil business; sales were of the surface only; the taxpayer and his representative were pas-

sive in the sales which have been irregular during the 10 years since acquisition of the properties; sales were made to pay taxes and expenses in perfecting titles and to reduce the investment in the mineral interest. The lands were not held primarily for sale in the ordinary course of taxpayer's business. The profits therefore, were capital gains as distinguished from ordinary income in the year in question. Fahs, Collector v. Crawford, et al, 5 Cir., 161 F.2d 315; Three States Lumber Co. v. Commissioner, supra; The Kanawha Valley Bank v. Commissioner, supra; Estate of Kleberg v. Commissioner, supra; Farley v. Commissioner, 7 T.C. 198.

Judgment will be entered as of the date of the filing of these findings of fact and conclusions of law this the 12th day of July, 1947.