C. E. Roseman v. Commissioner.
Roseman v. Commissioner
Docket No. 13166.
United States Tax Court
1948 Tax Ct. Memo LEXIS 220; 7 T.C.M. (CCH) 185; T.C.M. (RIA) 48050; April 7, 1948
Abe E. Gordon, Esq., for the petitioner. Howard M. Kohn, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioner's income and victory tax for the year 1943 in the amount of $11,535.30. The deficiency results, for the most part, from the respondent's determination that a loss sustained on the sale of real estate was a long-term capital loss, rather than an ordinary loss as claimed by the petitioner. Findings of Fact The parties have submitted *221 a partial stipulation of the facts, which we incorporate herein by reference. Petitioner is an individual residing in the city of Cleveland, Ohio. His income and victory tax return for the calendar year 1943 was filed with the collector of internal revenue at Cleveland. During the year 1943, and for many years prior thereto, the petitioner was president of the Standard Drug Company, a corporation operating a chain of retail drug stores, and devoted a large part of his time to that business. From 1924 down to and including the year 1943, he devoted a part of his time to the business of owning, operating and managing rental properties for the production of income. He bought and sold some real estate, both improved and unimproved. During that period of time petitioner owned and operated for rental five or six pieces of improved real estate, two or three of which were sold after being rented for a few years. Three of these properties purchased during the years 1924 to 1929 were still owned and rented by the petitioner in 1943. The gross annual income realized from these properties at that time, and for several years prior thereto, was in excess of $50,000. The petitioner purchased *222 the lots involved in this proceeding, described as "Sublots 64 and 65, and 129 and 130 in Shakerview Allotment," Cleveland, Ohio, on March 24, 1925, for $21,500. Sublots 64 and 65 were adjoining lots situated at the southeast corner of the intersection of East 145th Street and Milverton Avenue, and sublots 129 and 130 were adjoining lots located at the southwest corner of the intersection of said streets in the city of Cleveland. The petitioner purchased these lots on the representation of the real estate agent that there were parties who desired to take a long-term lease on them. On April 1, 1926, petitioner entered into a ninety-nine year lease of sublots 129 and 130 with Theodore A. Dahlburg and Beatrice Dahlburg, at an annual rental of $1,120, payable quarterly. The lessees agreed to pay all real estate taxes and to erect on the premises, before April 1933, a business building to cost not less than $25,000, and further agreed to deposit the sum of $1,120 as security for the performance of the obligations of the lease. On the same date petitioner entered into a lease of sublots 64 and 65 to Arthur Urdal, Roma B. Urdal, Harry B. Moore and Frankie L. Moore, similar in all respects *223 to the Dahlburg lease, except that the annual rental was $1,100 and the deposit as security for the performance of the obligations of the lease was $1,100. The Dahlburgs paid the rental on sublots 129 and 130 up to April 1, 1930. They defaulted in the payment of rent due at that time and were also in default for taxes due on the premises in December 1929. On June 18, 1930, in consideration of the forfeiture of the $1,120 deposit and the additional payment of $493.60, petitioner accepted the surrender of the premises and released the Dahlburgs from further liability under the provisions of their lease. The Urdals and Moores paid rent on sublots 64 and 65 up to July 1, 1930, at which time they defaulted in payment of an installment due on that date and they were also in default as to taxes due on June 20, 1930. On December 13, 1930, in consideration of the forfeiture of the $1,100 security deposit and the additional payment of $850, petitioner accepted a surrender of the premises and released the Urdals and Moores from further liability under the provisions of their lease. No buildings had been erected on these lots and the net rental income received for them from 1926 to 1930, *224 when they were surrendered, including the forfeitures and additional cash payments, was $12,818.60. After the lots were surrendered to the petitioner he planned to erect an apartment house for rental on sublots 129 and 130 and a similar one on sublots 64 and 65. In 1931 he engaged an architect at an expense of $2,500 to prepare plans and specifications for such building. These plans and specifications were submitted to banks and insurance companies in negotiations for loans to finance construction throughout the years 1931 and 1932, but petitioner was unable to obtain financial backing for the projects. About that time the district in which these lots were located was zoned against business properties. The petitioner then endeavored to sell the lots, but was unable to find a purchaser. Finally, on October 6, 1943, after reducing the price from time to time, he sold them at a net price of $2,497.25. Two unimproved lots in addition to the lots here involved were purchased between the years 1924 and 1931, to be used as sites for the erection of buildings for rental purposes. One of those lots was rented to an oil company on a ten-year lease without being improved and was sold about *225 the time the lease expired in 1935. The district in which the other lot was located was zoned against business and this lot was sold after being held for several years. Petitioner supervised the operation of his rental properties during all of the years in which he had been engaged in that business and in addition thereto supervised the operation of similar properties owned by his son and his wife. He personally kept records pertaining to these operations and all matters of major importance in connection therewith and submitted to him before any action was taken by his employees. A part of his real estate business was transacted at his downtown office, where he also performed his duties as president of the Standard Drug Company. Opinion LEMIRE, Judge: The sole question involved in this case is the extent to which the loss of $19,002.75 on the sale of the lots in question is deductible. Petitioner contends that it was an ordinary loss incurred in trade or business and is deductible in full under section 23 (e) (1) of the Internal Revenue Code. The Commissioner determined that the loss was one arising out of the sale of a capital asset and is therefore subject *226 to the limitation provided in section 117 of the Internal Revenue Code, as amended in 1942. The evidence is that in 1943, and for almost twenty years prior thereto, petitioner was engaged in the business of owning, operating and managing rental properties for the production of income. From time to time he acquired improved properties which he rented for income, and in some instances he acquired vacant lots and erected business buildings thereon which he rented for business purposes. Some of these improved properties were sold from time to time. Some of the vacant lots purchased for building sites became undesirable for that purpose and were rented for ground rents or sold without improvements. The petitioner purchased the lots involved in this proceeding for the purpose of renting them under long-term leases. They were so leased and rents were collected for a number of years. The lessees, having defaulted in the payment of rent, forfeited the leases in 1930 and surrendered the premises to the petitioner. During the years 1931 and 1932, the petitioner endeavored unsuccessfully to finance the construction of apartment houses on the lots. In 1932, or soon thereafter, *227 the district in which the lots were located was zoned against business and the petitioner offered the lots for sale. After reducing his price from time to time he finally sold them on October 6, 1943, at a net loss of $19,002.75. It is clear from the evidence and it is not denied by the respondent that the petitioner was engaged in the business of acquiring and renting real estate. The respondent argues, however, that the lots in question were not used by the petitioner in that business at the time of their sale and were held by him as investment property. The respondent's position, we think, is untenable. The petitioner acquired the lots originally for rental purposes and actually received rents on them for a number of years. As soon as they became undesirable for that purpose he offered them for sale. The fact that the lots were not yielding any income at the time of their sale does not mean that they were not acquired for the purpose of producing rental income. The disposal of property used in a business, after its usefulness for that purpose has ceased, is an incident of good business management. It is in no sense a conversion of the property from a business use to an investment. *228 See Julius Goodman, 40 B.T.A. 22. We think that the petitioner acquired and held the lots in question in connection with his business of renting real estate and that the lots were therefore not capital assets within the meaning of the statute. See John D. Fackler, 45 B.T.A. 708, affirmed, 133 Fed. (2d) 509; Leland Hazard, 7 T.C. 372
Decision will be entered under Rule 50.