W. B. Leedy and Company, Inc. v. Commissioner.
W. B. Leedy & Co., Inc. v. Commissioner
Docket No. 17630.
United States Tax Court
1952 Tax Ct. Memo LEXIS 113; 11 T.C.M. (CCH) 861; T.C.M. (RIA) 52251; August 12, 1952
*113 Vacant lots acquired by petitioner upon liquidation of an unsuccessful corporation found not to have been held primarily for sale to customers in the ordinary course of business. Alfred Swedlaw, Esq., for the petitioner Homer F. Benson, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The respondent has determined a deficiency in the amount of $984.44 and an overassessment in the amount of $1,829.86 in the petitioner's income and excess profits tax liability, respectively, for the taxable year ended December 31, 1944, and deficiencies in the amounts of $479.81 and $1,564.12 in the petitioner's income and excess profits tax liability, respectively, for the *114 taxable year ended December 31, 1945. Petitioner contests that part of the deficiencies for 1945 resulting from the respondent's determination that the gain on real estate sold in 1945 was taxable as ordinary income. Other issues raised in the pleadings have been either abandoned by the petitioner or have been settled by stipulation of the parties. Findings of Fact The petitioner is a Delaware corporation organized in 1943 as successor to an Alabama corporation of the same name organized in 1923. Its principal place of business is in Birmingham, Alabama. The tax returns for the taxable years in question were filed with the collector of internal revenue for the district of Alabama. The petitioner's business at all times consisted of negotiation and servicing of mortgage loans, rental of real estate owned by others, and selling real estate as a broker on a commission basis. The petitioner, by its corporate charter, is authorized, among other things, to buy and sell real estate, either as broker or agent, to act as rental agent of real property, to deal in mortgages, and also as principal to buy and sell real estate for its individual account. The gross income earned by the petitioner *115 and its predecessor during the years 1940 through 1945 is as follows: Activities
Negotiation
and Servicing
Rental of
Brokerage
of Mortgage
Properties
Commissions
Loans
for Principals
on Sales
Total
1940
$ 75,084.70
$37,231.41
$35,884.51
$148,200.62
1941
118,702.83
38,469.10
19,810.20
176,982.13
1942
125,896.34
38,870.31
9,906.41
174,673.06
First 9 Mos. 1943
95,883.65
28,718.89
8,661.47
182,995.45
Last 3 Mos. 1943
32,317.81
11,761.55
5,652.08
1944
145,200.84
45,306.31
15,501.17
206,008.32
1945
129,254.48
48,214.08
17,767.21
195,235.77
During the years 1933 through 1945, the petitioner and its predecessor also sold on its own account as principal certain real estate it had acquired mainly through foreclosure of mortgages, assumption of guaranteed mortgages and liquidation of defunct corporations. The gross receipts and the net gain or loss from such sales were as follows: Net Gain
Years
Gross Receipts
or Loss
1933
$ 1,000.00
($1,914.14)
1934
None
1935
9,210.73
1,791.74
1936
None
1937
None
1938
None
1939
1,665.75
(502.57)
1940
1,166.66
1941
None
1942
None
1943
6,525.00
(1,824.85)
1944
13,159.95
474.55
1945
5,200.00
2,018.50
*116 At the end of the taxable year 1945, petitioner still possessed three lots acquired in 1937 and one lot acquired in 1939. The property sold in 1945 consisted of five vacant lots (hereinafter referred to as the Pinecrest lots) situated in the subdivision of Pinecrest in the City of Birmingham, Alabama, which were acquired in 1942 through the liquidation of an unsuccessful corporation organized to build houses. The petitioner's predecessor was a stockholder in that corporation. Those lots had a cost basis of $3,100. Their selling price was $5,200. Selling expenses incurred in the sales totaled $81.50 and the petitioner realized a net gain of $2,018.50 on their sale. The petitioner and his predecessor did not develop or improve any of the properties, including the Pinecrest lots, nor did it place a for-sale sign on the property, advertise it in any way, solicit purchasers or make any effort to sell the properties. An individual engaged in the real estate and home building business solicited the petitioner to sell the Pinecrest lots. At first the petitioner stated that the property was not for sale but after repeated requests covering a period of several months or a year the petitioner *117 agreed to and did sell the lots. The petitioner made no other sales of real estate as principal in 1945. During the year 1945, the petitioner did not hold the Pinecrest lots primarily for sale to customers in the ordinary course of its trade or business. The office building located at the southwest corner of Third Avenue and Twenty-second Street, North, of the City of Birmingham, Alabama, which was acquired by the petitioner in 1945, has a basis of $28,000 to petitioner and is subject to depreciation at the rate of three per cent per annum. The excess profits tax credit of petitioner for the year 1945 is $31,825.17. Petitioner paid an excess profits tax of $2,745.87 for the year 1945. This tax was paid within three years before the mailing of the notice of deficiency in these proceedings, and the notice of deficiency was mailed within three years from the time the excess profits tax return for the year 1945 was filed by petitioner. Opinion ARUNDELL, Judge: The factual question before us is whether the petitioner held primarily for sale to customers in the ordinary course of its business the Pinecrest lots which were sold at a gain in 1945. The petitioner contends that they *118 were not so held and were instead capital assets as defined in section 117 (a) (1), Internal Revenue Code, or, alternatively, assets the gain from which is taxable at capital gains rates pursuant to section 117 (j) of the Code. The well-recognized tests that serve as guides in this factual determination have been summarized in numerous decisions. Dunlap v. Oldham Lumber Co., 178 Fed. (2d) 781; Boomhower v. United States, 74 Fed. Supp. 997; Albert Winnick, 17 T.C. 538. They are: continuity of sales and sales related activity over a period of time; frequency of sales, as opposed to isolated transactions; the activity of the seller or those acting under his instructions or in his behalf; the extent or substantiality of the transactions; and the reason for, the purpose, and the nature of the acquisition of the subject matter. Application of those tests to the facts before us clearly establishes that the Pinecrest lots were not held by the petitioner primarily for sale to customers in the ordinary course of its trade or business. The business of the petitioner at all times consisted of the negotiation and servicing of mortgage *119 loans, the renting of properties for principals, and the sale of real estate as agent on a commission basis. Its gross annual income from those activities ranged from a low of approximately $148,000 to a high of $206,000 during the period 1940 through 1945, whereas its gain on the sale of the Pinecrest lots was only $2,018.50. The Pinecrest lots were acquired upon the liquidation of an unsuccessful corporation organized to build houses. The petitioner made no improvements and did not attempt to develop them. No for-sale signs were placed on the properties and they were not advertised. Neither the petitioner nor its agents engaged in any sales activity and no purchasers were solicited with reference to the properties. Thomas E. Wood, 16 T.C. 213; W. T. Thrift, Sr., 15 T.C. 366; Frieda E. J. Farley, 7 T.C. 198; Trapp v. United States, 73 F. Supp. 385. On the contrary, the petitioner was solicited by the purchaser of the lots in question. At first the petitioner was unwilling to sell but after repeated requests extending over a period of several months or a year the petitioner agreed to and did sell the Pinecrest lots. As stated in *120 Frieda E. J. Farley, supra, p. 203, "* * * petitioner could have maintained a more passive role only by refusing to sell at all." We find no merit in the respondent's contention that the petitioner by its charter was authorized to buy and sell real estate as a principal. We have recently explained that it is not the mere possession of a power but, rather, it is the activities of the taxpayer that are determinative of this factual question. South Texas Properties Co., 16 T.C. 1003. For these reasons, we are of the view that the petitioner did not hold the Pinecrest lots primarily for sale to customers in the ordinary course of its trade or business. The gain from their sale in 1945 is taxable at capital gains rates. Sections 117 (a) (1), 117 (c) (1), and 117 (j) (1). The remaining issues have been disposed of by stipulation of the parties and will be taken into account in their computation under Rule 50. Decision will be entered under Rule 50.